522 S.E.2d 491 (1999)
239 Ga. App. 894
In the Interest of M.J.H., a child.
No. A99A0922.
Court of Appeals of Georgia.
September 10, 1999.
*492 Roger G. Queen, District Attorney, John G. Wilbanks, Jr., Assistant District Attorney, for appellant.
Bray & Johnson, H. Michael Bray, Canton, for appellee.
SMITH, Judge.
M.J.H. was charged by delinquency petition with conduct which, had he been an adult, would have constituted a violation of the Georgia Controlled Substances Act by possession of less than one ounce of marijuana. OCGA §§ 16-13-30(j); 16-13-2(b). M.J.H. moved to suppress the drugs found in his vehicle, and the trial court granted the motion in a lengthy, well-written, and well-reasoned order. The State appeals under OCGA § 5-7-1.1(2). We agree with the trial court that the police officer lacked the required reasonable and articulable suspicion to make a brief investigative stop of M.J.H.'s vehicle, and we therefore affirm.
In reviewing a trial court's decision on a motion to suppress evidence, we construe the evidence most favorably to uphold the findings and judgment of the trial court. We adopt the trial court's findings on disputed facts and on the credibility of witnesses unless those findings are clearly erroneous. Those findings will not be disturbed if there is any evidence to support them. Sprauve v. State, 229 Ga.App. 478, 479(1), 494 S.E.2d 294 (1997). Viewed in this light, the record reveals that the arresting officer routinely rode past a county park on his way home from work to "check the park out and make sure there's no vandalism." While the officer testified that the park was "an area of high vandalism," he was unable to identify the last time he investigated such a case, testifying only that the department received calls on "turning tail spins" or damage to signs on an average of once a month.
As the officer drove past the park at approximately 10:00 p.m. on January 3, 1998, he noticed a pickup truck parked "sideways" across the marked spaces in the parking lot. The officer acknowledged, however, that this manner of parking did not violate any law and that he did not observe the occupants doing anything wrong. On further investigation, he found no evidence of vandalism in the park. He also testified that he was unsure if hours were posted for use of the park.
The officer decided to question the occupants of the truck; he pulled up in the parking lot, activated his emergency warning lights, and approached the truck with his hand on his firearm. He acknowledged that the occupants of the vehicle were not free to leave at the time he approached the vehicle. When he tapped on the passenger side window, the occupant rolled down the window, and the officer smelled a distinctive odor of burning marijuana. The occupants of the truck consented to a search of the vehicle, and marijuana was found.
At least three types of police-citizen encounters exist: verbal communications that involve no coercion or detention; brief "stops" or "seizures" that must be accompanied by a reasonable suspicion; and "arrests," which can be supported only by probable cause. Verhoeff v. State, 184 Ga.App. 501, 503, 362 S.E.2d 85 (1987). We agree with the trial court that the officer's approach to the vehicle in this case constituted a second-tier encounter, a brief "stop" or "seizure" requiring the officer to have a reasonable and articulable suspicion of wrongdoing.
A "seizure" within the meaning of the Fourth Amendment occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave. Moran v. State, 170 Ga. App. 837, 840, 318 S.E.2d 716 (1984). While an officer may simply approach a stopped vehicle and inquire as to what is going on without initiating a "stop" or "seizure," McClain v. State, 226 Ga.App. 714, 716, 487 S.E.2d 471 (1997), the inquiry may become a stop or seizure if the officer restrains the citizen's movement by physical force, command, or show of authority. Aranda v. State, 226 Ga.App. 157, 158, 486 S.E.2d 379 (1997) (threatening presence, display of weapon, physical touching, or use of language *493 or tone implying compulsion may indicate seizure); see also State v. Bryant, 203 Ga. App. 69, 71, 416 S.E.2d 368 (1992).
The officer's approach to M.J.H.'s stopped vehicle is factually different from the incident in State v. Folk, 238 Ga.App. 206, 521 S.E.2d 194 (1999), in which we reversed the grant of a motion to suppress. In Folk, a police officer simply walked up to Folk's car and asked what he was doing, and Folk willingly responded. That officer did not restrain or direct Folk's movement by any show of authority, order, or physical force and did nothing to prevent Folk from driving away. We characterized the encounter as "casual and conversational." Id. at 208, 521 S.E.2d 194. Here, in contrast, the officer activated his emergency lights and approached the vehicle with his hand on his weapon. Moreover, he acknowledged that M.J.H. and his companion were not free to leave. Under these circumstances, we agree with the trial court that this encounter was a "stop" within the meaning of the Fourth Amendment.
A second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without reasonable suspicion. Reasonable suspicion exists when an officer has a particularized and objective basis for suspecting that a citizen is or is about to be involved in criminal activity.
An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal conduct. What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing.
(Citations and punctuation omitted.) State v. Fowler, 215 Ga.App. 524, 525, 451 S.E.2d 124 (1994).
Construing the evidence, as we must, to uphold the findings and judgment of the trial court, we agree that the record shows no objective manifestation that M.J.H. was, or was about to be, engaged in criminal conduct. The officer acknowledged he did not observe the occupants of the truck doing anything wrong. The only arguably suspicious behavior observed by the officer was parking a vehicle outside the white lines in the parking lot of a public park at 10:00 at night.
We reversed the denial of a motion to suppress evidence obtained in a vehicle stop under very similar facts in Attaway v. State, 236 Ga.App. 307, 309, 511 S.E.2d 635 (1999). There, as here, no evidence was introduced that the driver of the car had violated any local ordinance or other law, or that any other basis existed for making a stop. The mere fact that past incidents of vandalism had occurred in the area of the stop did not indicate that the driver was, or was about to be, engaged in criminal conduct, in the absence of some information linking the driver to the vandalism. We concluded that the driver's behavior "did not provide a `particularized and objective basis for suspecting him of criminal activity sufficient to justify an investigatory stop.'" Id. And unlike the officer in Attaway, the officer here had not even received a call reporting illegal or suspicious behavior, but simply drove by the park on his way home. We agree with the trial court that the officer "lacked a reasonable and articulable suspicion to detain" M.J.H., and we affirm the grant of his motion to suppress.
Judgment affirmed.
POPE, P.J., and ELDRIDGE, J., concur.