## A09A2116. THOMAS v. THE STATE.

### (687 SE2d 203)

BLACKBURN, Presiding Judge.

Demetrius Thomas appeals from his convictions of possession of cocaine with intent to distribute,[1] possession of marijuana with intent to distribute,[2] and felony obstruction of an officer,[3] asserting that the trial court erred in: (1) denying his motion to suppress certain evidence; and (2) excluding certain impeachment evidence that Thomas sought to use against the arresting officer. Finding that the evidence which Thomas sought to suppress was obtained through an illegal police detention and search of Thomas, we reverse.

On a motion to suppress, the State bears the burden of proving that the police detention of the defendant was legal. *Teal v. State.*[4] "When reviewing a ruling on a motion to suppress, where, as here, the evidence is uncontroverted and there exists no question regarding witness credibility, we review de novo the trial court's application of the law to the facts presented." *State v. Torres.*[5] In doing so, "we consider all the evidence of record, including evidence introduced at trial." (Punctuation omitted.) *Lindsey v. State.*[6]

The only evidence relevant to the issue of suppression was the testimony of the arresting officer, offered at both the motion to suppress hearing and at trial. According to the officer, on the afternoon of July 19, 2008, he was standing outside of the building that houses the Lumpkin Police Department when he observed Thomas standing in a parking lot located approximately one and one-half blocks away. The parking lot, which was shared by a nightclub and a restaurant, was known to police as an area where illegal drug transactions and illegal drug use frequently occurred. Because the proprietor of the nightclub and restaurant had asked police to help control loitering in the area, the officer got into his patrol car and drove toward the parking lot. As he approached the parking lot, the officer saw Thomas standing next to a parked vehicle and observed him reach into the passenger side of the vehicle and then walk away. The vehicle then left the parking lot and the officer drove into the same lot. As the officer did so, Thomas walked to the steps of the restaurant, picked up a water bottle, and began walking toward the nightclub.

Believing that the interaction between Thomas and the vehicle

---

[1] OCGA § 16-13-30 (b).

[2] OCGA § 16-13-30 (j).

[3] OCGA § 16-10-24 (b).

[4] *Teal v. State*, 291 Ga. App. 488, 489 (662 SE2d 268) (2008).

[5] *State v. Torres*, 290 Ga. App. 804, 805 (660 SE2d 763) (2008).

[6] *Lindsey v. State*, 287 Ga. App. 412, 412 (651 SE2d 531) (2007).

was a drug transaction, the officer exited his patrol car and called to Thomas, saying, "Hey, come over here and let me talk to you." The officer testified that when Thomas failed to respond he did not call out a second time, but instead "ran over and got in front of [Thomas]" and said "come over here and let me talk to you and make sure you ain't got no weapons. Come over here to my car and let me pat you down real quick." The officer explained that when Thomas refused to accompany him to his patrol car, "I had to actually grab him. I grabbed his arm and tried to get him over, bring him over to my car so I could make sure he didn't have any [weapons] on him. He snatched away from me, so I grabbed him again and he reached his hand in his pocket." Thomas removed a bag from his pocket and the officer, by his own description, "picked [Thomas] up and I slammed him to the ground" and told him "[q]uit resisting. Quit resisting."

The officer continued his efforts to restrain Thomas by getting "on his back" and "slamming him to the ground" at least two more times. During this time, Thomas threw the bag that he had removed from his pocket away from him, and toward the nearby buildings.

After putting handcuffs on Thomas and placing him in the patrol car, the officer retrieved the bag thrown by Thomas. The officer then transported both Thomas and the bag back to the police station, despite the fact that he had not yet looked at the bag to determine its contents. Upon opening the bag at the police station, the officer determined that it contained drugs, and he formally arrested Thomas and read him his *Miranda* rights. At trial, the State showed that the bag contained 14 smaller bags of marijuana and 14 smaller bags of powdered cocaine, packaged as though for individual sale, and a pill bottle filled with crack cocaine. Thomas was subsequently indicted on a single count each of possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, bribery,[7] and felony obstruction of an officer.

Prior to trial, Thomas filed a motion to suppress the bag he had thrown from his pocket and its contents, arguing that the seizure of the same resulted from an illegal police detention. Following a hearing on that motion, the trial court denied it from the bench, and the case proceeded to trial. At trial, Thomas sought to impeach the arresting officer with evidence that he had been placed on 24 months probation with the Georgia Peace Officer Standards and Training (P.O.S.T.) Council for departmental rule violations and conduct unbecoming an officer. The trial court refused to allow the introduction of that evidence, because the officer did not testify to his status

---

[7] The bribery charge was apparently based upon the officer's claim that, when questioned at the police station, Thomas offered the officer $5,000 to drop the charges.

as a P.O.S.T.-certified officer.

A jury found Thomas guilty of all but the bribery charge, the trial court entered a judgment of conviction on that verdict, and this appeal followed.

1. There are three tiers of police-citizen encounters, and to analyze a defendant's claim that he was the victim of an illegal police detention, a court must first categorize the police-citizen encounter at issue. See *State v. Harris*.[8] First-tier encounters are consensual communications between police and citizens and involve no coercion or detention; second-tier encounters, which must be supported by reasonable suspicion, are brief stops done for the purpose of investigating suspected criminal activity; and third-tier encounters are actual or de facto arrests and, accordingly, must be supported by probable cause. See *Whitmore v. State*.[9]

In denying Thomas's motion to suppress, the trial court found that "the officer had suspicion enough to inquire and perform a first-tier detention [sic] and the actions of the defendant, when he brought the drugs out, justified the remainder of the search and seizure." This holding, however, cannot be supported by either the evidence or the relevant law.

> In a first-tier encounter, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. There is no threshold requirement and indeed the individual may refuse to answer or ignore the request and go on his way if he chooses, for this does not amount to any type of restraint and is not encompassed by the Fourth Amendment. So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required.

(Punctuation omitted.) *Black v. State*.[10]

Thus, the initial encounter between Thomas and the officer could be viewed as a consensual, first-tier encounter only if a reasonable person in Thomas's position would have felt "free to decline the officer's request [to speak with Thomas] or otherwise terminate the encounter." (Punctuation omitted.) *Whitmore*, supra,

---

[8] *State v. Harris*, 261 Ga. App. 119, 121 (581 SE2d 736) (2003).
[9] *Whitmore v. State*, 289 Ga. App. 107, 108 (657 SE2d 1) (2008).
[10] *Black v. State*, 281 Ga. App. 40, 43 (1) (635 SE2d 568) (2006).

289 Ga. App. at 108. "Indeed, a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter" (*Harris*, supra, 261 Ga. App. at 122), and "[e]ven running from police during a first-tier encounter is wholly permissible." *Black*, supra, 281 Ga. App. at 44 (1).

Here, the unequivocal testimony of the arresting officer shows that, from the time he entered the parking lot in his patrol car, Thomas was not free to leave that parking lot until he had allowed the officer to question him. When Thomas attempted to walk away from the officer, the officer responded by physically blocking Thomas's path, demanding that Thomas submit to a pat-down, and physically restraining Thomas. Furthermore, the officer acknowledged at trial that Thomas had been detained and was not free to leave the scene until the officer had completed his investigation, which would, as a matter of course, include frisking Thomas for weapons. By the officer's own admission, therefore, his stop of Thomas "was a second-tier, investigative detention that required the officer to have a particularized and objective basis for suspecting that [Thomas] was or was about to be involved in criminal activity." *Walker v. State*.[11] See also *State v. Banks*.[12]

> To stop a citizen, the officer must possess more than a subjective, unparticularized suspicion or hunch. The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing.

(Punctuation omitted.) *Black*, supra, 281 Ga. App. at 43 (1). "This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence." (Punctuation omitted.) *Barnes v. State*.[13]

The officer testified that his detention of Thomas was based on the fact that he had seen Thomas standing in a parking lot known for drug activity, had observed him reaching into the passenger side of a vehicle located in that parking lot, and had seen the vehicle driving away. According to the officer, this activity was indicative of a drug transaction. The officer admitted, however, that he saw no drugs and that he did not see Thomas engaging in any illegal activity. Nor did

---

[11] *Walker v. State*, 299 Ga. App. 788, 790 (1) (683 SE2d 867) (2009).
[12] *State v. Banks*, 223 Ga. App. 838, 841 (479 SE2d 168) (1996) (physical precedent only).
[13] *Barnes v. State*, 228 Ga. App. 44, 46 (491 SE2d 116) (1997).

the officer indicate that "there were [any] complaints that day of drug activity or of [Thomas's] involvement in such activity" and the officer acknowledged that he "did not know [Thomas] or know if he had been involved in drug activity in the past." *Walker*, supra, 299 Ga. App. at 790 (1).

"[M]ere presence in an area known to the police for drug activity, without more, is insufficient to support a reasonable suspicion that one is engaged in or about to engage in criminal activity." *Barnes*, supra, 228 Ga. App. at 46. See also *In the Interest of J. T.*[14] Nor is the fact that Thomas was seen reaching into the passenger side of a car in that area sufficient to support a *Terry* stop. See *Holmes v. State*[15] ("there was no objective manifestation that [defendant] was, or was about to be, engaged in criminal activity merely because he approached the passenger's side of a car in a 'high-crime area,' walked toward an apartment complex, changed his mind, and walked back toward a car parked on the side of the road"). "While such behavior might justify an officer in closely observing the individual engaged in that behavior, it is not alone sufficient to indicate that the individual is or might be engaged in illegal activity so as to provide a reasonable, articulable suspicion to stop that individual." (Punctuation omitted.) *Pritchard v. State*.[16]

"At best, [these facts] raised a subjective, unparticularized suspicion or hunch. They did not constitute an objective basis for suspecting [Thomas] of involvement in drug activity and [did not] justify a second-tier investigatory detention. The detention here was unreasonable." (Footnote omitted.) *Walker*, supra, 299 Ga. App. at 791 (1).

Moreover, the evidence shows that the discovery of the drugs resulted not merely from the officer's detention of Thomas, but from his demand that Thomas submit to a pat-down and his attempt to perform the same. However, because "there is nothing in this record from which one could reasonably [infer that Thomas] was armed and dangerous," the officer had no right to conduct such a pat-down, much less demand that Thomas submit to one. *Banks*, supra, 223 Ga. App. at 840-841. "Consequently, even if we were inclined to credit the State's argument that [the] [o]fficer . . . could have reasonably suspected [Thomas] of [illegal drug activity]," id., we would still be constrained to find that the drugs should have been suppressed.

[E]ven a particularized and objective basis for making [a

---

[14] *In the Interest of J. T.*, 239 Ga. App. 756, 759 (521 SE2d 862) (1999).

[15] *Holmes v. State*, 252 Ga. App. 286, 288-289 (556 SE2d 189) (2001).

[16] *Pritchard v. State*, 300 Ga. App. 14, 16 (684 SE2d 88) (2009).

*Terry*] stop does not authorize a pat-down of the suspect for weapons. An officer who has lawfully detained a citizen is authorized to conduct a *Terry* pat-down for weapons only if the officer has a reasonable belief preparatory to an intended pat-down that the suspect is armed and presents a danger to the officer or others. Implicit in this rule of law is the prerequisite determination that the officer actually concluded that the suspect was armed or a threat to personal safety and the officer can articulate a basis for his conclusion so that a protective pat-down would not be unreasonable in the given set of circumstances.

*Perez v. State.*[17]

The officer testified that he wished to frisk Thomas before even speaking with him merely because he considered that standard police procedure. As the foregoing demonstrates, this testimony represents a complete misunderstanding of basic Fourth Amendment law. "Because the evidence in this case does not show that the officer had a reasonable basis for concluding that [Thomas] was armed or dangerous prior to conducting his automatic and habitual pat-down, the pat-down was constitutionally improper." (Punctuation omitted.) *Teal*, supra, 291 Ga. App. at 489. See also *State v. King*[18] (an officer's "mere hunch that [a suspect] was involved with drugs and that drugs were usually linked to violence did not justify the pat-down" of that suspect).

Given that the discovery of the drugs resulted from an unconstitutional police detention and search, that evidence was tainted, and the trial court erred in denying Thomas's motion to suppress the same. *Teal*, supra, 291 Ga. App. at 489-490. "And, we note, [Thomas's] attempt to avoid the illegal detention cannot support an obstruction charge." *Walker*, supra, 299 Ga. App. at 791 (1).

2. In light of our holding in Division 1, we need not address Thomas's remaining enumeration of error.

*Judgment reversed. Adams and Doyle, JJ., concur.*

DECIDED NOVEMBER 19, 2009.

*Clark C. Adams, Jr.*, for appellant.

---

[17] *Perez v. State*, 284 Ga. App. 212, 216 (3) (643 SE2d 792) (2007).
[18] *State v. King*, 227 Ga. App. 466, 469 (489 SE2d 361) (1997).

*Plez H. Hardin, District Attorney, Daniel P. Bibler, Assistant District Attorney*, for appellee.