## A11A1156. CULPEPPER v. THE STATE.
(717 SE2d 698)

BLACKWELL, Judge.

Following a bench trial in DeKalb County, Larry Culpepper was convicted of possession of cocaine[1] and possession of a firearm by a convicted felon.[2] Culpepper appeals, asserting that the trial court erred when it denied his motion to suppress evidence that was recovered from his rental car. Culpepper contends that the search of the car was unlawful because it was the fruit of an unreasonably prolonged investigative detention. We see no error and affirm the judgment of conviction.

When we review the denial of a motion to suppress, we view the evidence in the light most favorable to the findings and judgment of the trial court, *Tanner v. State*, 281 Ga. App. 101, 101 (635 SE2d 388) (2006), and we accept its findings on questions of fact and credibility unless they are clearly erroneous and there is no evidence to support

---

[1] See OCGA § 16-13-30 (a).
[2] See OCGA § 16-11-131.

them. *Alex v. State*, 220 Ga. App. 754 (1) (470 SE2d 305) (1996). So viewed, the record in this case shows that, late on the evening of August 5, 2009, a DeKalb County police officer, who was on patrol and accompanied by an officer trainee, observed a conversion van and a Nissan Altima, both parked outside a stereo store and next to a locked, fenced enclosure in which a number of other cars were parked. The rear of the van was adjacent to the fence, its back doors were open, and the officer saw two men standing near the rear of the van. The stereo store was closed at the time, as were the other businesses in the area, and the officer knew that there had been a number of burglaries and thefts in the area recently. Among other incidents, someone recently had broken into a fenced enclosure at a neighboring business, had broken into the vehicles that were parked inside, had stolen some vehicles, and had entered the store and stolen some equipment inside. The officer had been instructed to be on the lookout for possible burglars and thieves in the area.

Concerned that the two men at the rear of the van might be up to no good, the officer approached the two men, who later were identified as Culpepper and his friend, who is identified only as "Mr. Irby" in the record. Irby told the officer that his father operated the paint shop located behind the stereo store, that his father was working late in the shop, and that he and Culpepper were just waiting for his father. The officer then asked Irby to call his father, so that his father could verify his story. Irby claimed, however, that he could not contact his father, and both his story and demeanor then began to change.

As the officer continued to speak with Culpepper and Irby, the officer noticed that both men became increasingly nervous, seemed to be looking around to see if anyone else was in the area, and attempted to create distance between themselves and the officer and between one another. The officer obtained identifying information from Culpepper and Irby and learned that Irby, who said that he had driven the van to the scene, had a suspended license. The officer also learned that the Altima driven by Culpepper was a rental vehicle, a number of which, the officer knew, had been stolen in the area. The officer asked to see the rental agreement for the Altima, and when he followed Culpepper to retrieve the agreement from the car, he noted that Culpepper had to look for the agreement in several areas of the car, finally locating it in the center console. More important, when Culpepper opened the center console, the officer observed the handle of a firearm. After opening the center console, Culpepper "grabbed the rental agreement and slammed the center console real fast," according to the officer.

The officer then called for other police officers to come to the scene. He also asked Culpepper if there were any weapons in the

Altima. At first, Culpepper said "no," but when the officer asked again later, Culpepper looked nervously at the officer and never answered. Turning to the rental agreement, the officer noticed that the Altima was supposed to have been returned six days earlier, so he contacted the rental company and verified that the rental agreement had expired.

Additional police officers then arrived on the scene, and the first officer secured the firearm that he had observed in the Altima. While removing the firearm from the console, the officer noticed a digital scale with substantial white residue, which a field test indicated was cocaine. Culpepper admitted that the scale with the white residue was his and that he used cocaine. And a check of the firearm revealed that it had been stolen in Henry County. The officers arrested Culpepper, and after placing him in a patrol vehicle, conducted an inventory search of the Altima, which revealed large amounts of bundled currency, including $100 bills, $50 bills, and $20 bills.

Culpepper moved to suppress the evidence recovered from the Altima — the firearm, the digital scale with cocaine residue, and the large amounts of currency — and following an evidentiary hearing, the trial court denied the motion. The trial court summarized its findings of fact and explained its denial of the motion as follows:

> Based on the evidence, the officer had a reasonable[,] articulable suspicion that Culpepper was, or was about to be, involved in criminal activity. Each step of the investigation reasonably led to the next. At 10:00 at night, an officer, who was patrolling the area businesses due to recent thefts, saw a van and car backed up to a locked gate of a business that was closed. When the officer stopped to inquire of the vehicles' occupants, he received a series of inconsistent stories. A criminal check showed that the van's owner had a suspended license, and that the car was a rental. Upon asking for the rental agreement, the officer saw a gun. The rental agreement that Culpepper gave to the office[r] had expired. The officer legally retrieved the gun, which was stolen, and also found a digital scale with cocaine residue. Culpepper admitted that the scale was his, and that he used cocaine. The detention was not unreasonably prolonged because the officer's initial reason for stopping never dissipated, and other grounds for detaining Culpepper arose.

Culpepper subsequently agreed to a bench trial, at which he stipulated to the facts found by the trial court at the hearing on the motion, that he had previously been convicted of a felony, and that the residue found on the scale was, in fact, cocaine. The trial court

found Culpepper guilty of unlawfully possessing cocaine and, being a convicted felon, a firearm. Culpepper now appeals from the judgment of conviction.

On appeal, Culpepper says that the trial court should have granted his motion to suppress because the officer lacked a reasonable, articulable suspicion that Culpepper was engaged in criminal wrongdoing, and for this reason, his prolonged detention prior to his arrest was unlawful. We disagree.

The principles drawn from the Fourth Amendment that govern encounters between police officers and citizens are well settled and familiar:

> As this Court and our Supreme Court have explained many times before, encounters between police officers and citizens come in three varieties, at least as far as the Fourth Amendment is concerned: encounters involving no coercion or detention, which are outside the purview of the Fourth Amendment altogether; brief seizures, which require an officer to have a reasonable suspicion of criminal wrongdoing; and custodial arrests, which require probable cause.

*White v. State*, 310 Ga. App. 386, 387 (1) (714 SE2d 31) (2011) (citations omitted).

> With respect to the first kind of encounter, one involving no coercion or detention, "police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave."

Id. (citation omitted). So long as a reasonable person, in light of all the circumstances, would believe that he is free to leave, an encounter does not amount to a seizure of the person and does not, therefore, implicate the Fourth Amendment at all. See *Bacallao v. State*, 307 Ga. App. 539, 541 (705 SE2d 307) (2011). Culpepper concedes that his encounter with the officer in this case was, at first, just such a consensual encounter,[3] and we, therefore, need not scrutinize the undisputed, consensual portion of the encounter.

---

[3] Culpepper is right to concede as much. As we have said before, an officer merely approaching an already-stopped vehicle and making inquiry of its occupants does not, without more, amount to a stop or seizure for which Fourth Amendment scrutiny is required. See *Baker v. State*, 300 Ga. App. 307, 309 (684 SE2d 427) (2009).

Culpepper contends, however, that the encounter evolved into an investigative detention — an encounter of the second kind — when the officer detained Culpepper after obtaining his identifying information and confirming that no warrants for his arrest were outstanding. Even accepting the contention that the encounter at that point evolved into a seizure of Culpepper, we conclude that the trial court was authorized to find the officer had reasonable grounds for detaining him and, for this reason, properly denied the motion to suppress.

The Fourth Amendment permits an officer to seize a person if the seizure is reasonable. See *Johnson v. State*, 299 Ga. App. 474, 478 (682 SE2d 601) (2009) ("[T]he touchstone of any Fourth Amendment analysis is a determination of whether an officer's conduct is reasonable based upon all of the objective facts."). And a temporary, investigative detention is reasonable if the officer is aware of "specific and articulable facts which, taken together with rational inferences from those facts, provided a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Rolfe v. State*, 278 Ga. App. 605, 606 (630 SE2d 438) (2006) (citation and punctuation omitted); see also *Hughes v. State*, 269 Ga. 258, 259-260 (497 SE2d 790) (1998); *Jupiter v. State*, 308 Ga. App. 386, 389 (1), n. 15 (707 SE2d 592) (2011). While a mere hunch is not enough to render an investigative detention reasonable, law enforcement officers are permitted to draw upon their own experience and training in assessing the circumstances in which they find themselves, and when courts are considering the reasonableness of an investigative detention, they properly defer to reasonable inferences and deductions drawn by officers in light of their experience and training. See *Esposito v. State*, 293 Ga. App. 573, 576 (667 SE2d 425) (2008) (officers properly may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person") (citation and punctuation omitted); see also *Bishop v. State*, 299 Ga. App. 241, 243 (682 SE2d 201) (2009); *Rolfe*, 278 Ga. App. at 606-607.

Here, by the time Culpepper contends the encounter had evolved into an investigative detention, the officer had found Culpepper and Irby in the parking lot of a closed business late at night, he had seen that the van that Irby was driving was parked with its back doors open to a locked, fenced enclosure in which several other cars were parked, he knew that several burglaries and thefts had occurred in the area recently, including an incident in which someone broke into and stole cars in a fenced enclosure at the business next door, he had been told that Irby had been unable to summon his father to the scene to confirm his account of why they were in the parking lot, and

he knew Irby had given conflicting explanations of their presence in the parking lot. Moreover, the officer had observed that Culpepper and Irby appeared to be nervous when the officer spoke with them, that they seemed to be trying to create a distance between themselves and the officer, and that they appeared to be visually scanning the area to determine if anyone else was around. That was enough reason for the officer to detain Culpepper, even after he ascertained that no warrants were outstanding, to further investigate what Culpepper and Irby were doing in the parking lot of a closed business late in the night.[4] See *Andrews v. State*, 289 Ga. App. 679, 682 (658 SE2d 126) (2008) (occupants of vehicle giving conflicting accounts of their activities "is a basis for reasonable suspicion"); *Rolfe*, 278 Ga. App. at 607 (officer had reasonable grounds to stop and detain individuals who drove away from a closed business in the early morning hours when the officer was aware of recent thefts at the business and the individuals appeared to evade the officer by driving an unusually circuitous route when he approached); *Almond v. State*, 242 Ga. App. 650, 652-653 (1) (530 SE2d 750) (2000) (officer had reasonable grounds to detain individual who had stopped in area known for drug trafficking, was speaking with a man who police had reason to believe was a drug dealer, seemed nervous, and gave inconsistent accounts of her activities to the officer).

Having concluded that the officer was entitled to detain Culpepper even after the officer ascertained that no warrants were outstanding, we have little difficulty in concluding that the officer was entitled to continue to detain Culpepper for the balance of their encounter. When the officer asked to see the rental agreement for the car that Culpepper was driving, Culpepper produced a rental agreement that had expired, which gave the officer an independent and

---

[4] The precedents on which Culpepper relies are distinguishable. In *Thomas v. State*, 301 Ga. App. 198 (687 SE2d 203) (2009), an officer detained an individual based solely on the individual having had some interactions with the driver of a car in a parking lot in which drug transactions frequently occurred. In *Brown v. State*, 301 Ga. App. 82 (686 SE2d 793) (2009), an officer detained an individual based on the facts that he was not a resident of the apartment complex through which he was walking, one that was known for drug and criminal activity, that he attempted to walk away from the officer and, at first, ignored the officer, and that he was wearing a hooded sweatshirt and jacket. In *Walker v. State*, 299 Ga. App. 788 (683 SE2d 867) (2009), an officer detained three men, one of whom seemed to be nervous, because they were standing in the roadway in an area known for drug trafficking and started to walk away when the officer first approached. *In the Interest of M. J. H.*, 239 Ga. App. 894 (522 SE2d 491) (1999), involved an officer who detained a juvenile simply because his truck was parked across several spaces in the parking lot of a public park late in the evening. *McKinley v. State*, 213 Ga. App. 738 (445 SE2d 828) (1994), involved an officer who relied exclusively on an insufficiently corroborated anonymous tip as a basis for stopping the defendants. Among other distinctions, none of these cases involved individuals who gave inconsistent accounts of their activities to an officer prior to the detention, which, when combined with the other suspicious conduct in this case, is enough to warrant a conclusion that the officer was entitled to detain Culpepper.

additional reason to detain Culpepper, so that the officer could investigate the status of the rental car. See *Tanner*, 281 Ga. App. at 103 (1) ("[G]iven that the rental agreement had, in fact, expired, the deputy had an objective reason for believing that Tanner may have been engaged in criminal conduct.") (citation and punctuation omitted); see also *Langston v. State*, 302 Ga. App. 541, 544 (691 SE2d 349) (2010) (upon discovering that a rental agreement reflected that a car should have been returned eight days earlier, an officer is authorized to detain the driver and investigate whether he is in lawful possession of the car). Moreover, at the time Culpepper produced the rental agreement, the officer saw a firearm in the center console of the rental car, which Culpepper apparently tried to conceal by quickly closing the console, and when he asked Culpepper whether any weapons were in the car, Culpepper denied it. That too was a reason for the officer to detain Culpepper[5] and to secure the firearm for his own safety.[6] And in the course of securing the firearm, the officer saw in plain view the digital scale with white residue, which a field test indicated was cocaine and which Culpepper admitted was his, affording the officer probable cause to effect a custodial arrest of Culpepper, which the officer did. See *State v. Webb*, 193 Ga. App. 2, 5 (2) (386 SE2d 891) (1989) (the plain view doctrine supports a warrantless search and seizure if the officers are lawfully in position to obtain the view, the discovery is inadvertent, and the object viewed is immediately seen to be incriminating); *Griffin v. State*, 180 Ga. App. 189, 190 (348 SE2d 577) (1986) (arrest and

---

[5] At that point, the officer had probable cause to believe that, by lying about whether weapons were in the vehicle, Culpepper had violated OCGA § 16-10-20, which provides, in pertinent part, that a person who makes a false statement or representation in any matter within the jurisdiction of any department or agency of a county government commits the offense of uttering false statements, a felony. In any event, that Culpepper actively tried to conceal the firearm from the officer is suggestive of other criminal activity and sufficiently suspicious to warrant an investigative detention. See *State v. Turntime*, 170 Ga. App. 740, 742-743 (1) (318 SE2d 157) (1984) (an officer is constitutionally authorized to investigate the circumstances which provoke a reasonable and found suspicion on his part).

[6] We have said before that, when an officer becomes aware of a weapon in a vehicle during an investigative stop, the officer may secure the weapon for his own safety. See *Megesi v. State*, 277 Ga. App. 855, 857-859 (2) (627 SE2d 814) (2006) (physical precedent only). And in this case, the officer not only knew that a firearm was in the rental car, but also that Culpepper was trying to conceal its existence from the officer. In these circumstances, we think the officer was entitled to enter the vehicle for the purpose of retrieving and securing the firearm. See *Silva v. State*, 278 Ga. 506, 508 (604 SE2d 171) (2004) (officer who has detained an occupant of a vehicle may conduct a search founded on the reasonable belief, based on articulable facts and rational inferences, that the occupant may gain immediate control of a weapon when he re-enters his car after the detention); *Kennedy v. State*, 298 Ga. App. 372, 373-374 (1) (680 SE2d 478) (2009) (movements by detained individuals outside vehicle to conceal bag inside vehicle justified officer's search of the vehicle for a weapon); *Bell v. State*, 295 Ga. App. 607, 611 (2) (672 SE2d 675) (2009) (furtive movements or other indications of danger to an officer justify a search for weapons in a limited area in which a weapon may be placed or hidden).

search are predicated on probable cause where officer relies on his senses to "see" contraband in plain view).

Culpepper points to the duration of the investigative detention — he says it lasted nearly an hour — as evidence that it was unnecessarily prolonged. Even assuming that the detention lasted for that long,[7] we cannot say that the officer unreasonably prolonged the detention. The officer's initial reason for stopping Culpepper never dissipated, and other grounds for detaining Culpepper arose as the officer continued his investigation. See *Langston*, 302 Ga. App. at 544. There is no evidence that the officer at any point discontinued his investigation of the circumstances that formed a basis for his reasonable suspicion. Cf. *Dominguez v. State*, 310 Ga. App. 370 (714 SE2d 25) (2011). The facts, taken together with rational inferences from those facts, reasonably warranted the detention, and the trial court was authorized to deny the motion to suppress.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED OCTOBER 18, 2011.

*Daniel B. Kane*, for appellant.

*Robert D. James, Jr., District Attorney, Jennifer L. Little, Deborah D. Wellborn, Assistant District Attorneys*, for appellee.

---

[7] The State disputes that the encounter lasted for that long, and we find no evidence in the record that establishes that it did. We note that, although the trial court apparently was shown a video of portions of the encounter, no video recording appears in the record on appeal.