A11A1853. BRANDT v. THE STATE.
(723 SE2d 733)

BLACKWELL, Judge.

Ryan Brandt and William Kollie were tried by a Gwinnett County jury and convicted of crimes arising from a home invasion and two restaurant robberies. They previously appealed their convictions, and as to Brandt, we vacated the denial of his motion to suppress and remanded for reconsideration of that motion in light of *Arizona v. Gant*, 556 U. S. 332 (129 SC 1710, 173 LE2d 485) (2009), a decision that came down while the appeal was pending. See *Kollie v. State*, 301 Ga. App. 534, 547 (15) (687 SE2d 869) (2009). On remand, the court below again denied the motion to suppress, and Brandt appeals for a second time. Finding no error in the denial of the motion to suppress, we affirm.

When we review the denial of a motion to suppress, we owe no deference to the way in which the court below resolved questions of

---

law, *Barrett v. State*, 289 Ga. 197, 200 (1) (709 SE2d 816) (2011), but we accept its findings about questions of fact and credibility unless clearly erroneous, and we view the evidence in the light most favorable to its findings and judgment. *Culpepper v. State*, 312 Ga. App. 115, 115-116 (717 SE2d 698) (2011). So viewed, the evidence in this case shows that, early on the morning of November 4, 2005, Gwinnett County police officers were advised by radio that an Applebee's restaurant, located on Ronald Reagan Parkway in Snellville, had just been robbed and that Snellville police officers were responding to the armed robbery.[1] One Gwinnett County officer, who happened to be patrolling Ronald Reagan Parkway when he heard the dispatch, started to drive toward the restaurant, thinking that perhaps he could be of help to the Snellville officers. As this officer drove along Ronald Reagan Parkway, he passed a second Gwinnett County officer, who was parked on the opposite side of the road. A few moments later, the first officer met a black truck, which was occupied by two men, later identified as Kollie and Brandt, and was traveling away from the location of the restaurant at a high rate of speed. The first officer slowed and put a spotlight on the truck, and as the truck passed him, it suddenly accelerated. The first officer turned around and attempted to catch up to the truck, and as he did so, the truck passed the second officer, who also noted that the truck was traveling at a high rate of speed and observed the driver momentarily lose control of the truck.

The second officer stopped the truck, and the first officer arrived a few moments later at the scene of the stop. As the second officer approached the truck on foot and obtained the license of Kollie, the driver, the officers began to overhear additional radio dispatches about the armed robbery of the restaurant. According to these dispatches, two black men, one wearing a white shirt and black jeans, the other wearing a light-colored shirt and a red bandana on his head, had robbed the restaurant and were believed to be driving a black, Harley-Davidson edition, Ford pickup truck. The officers realized that the truck they had stopped and its occupants matched exactly the descriptions contained in the radio dispatches, and at first, they decided to await the arrival of additional officers before doing anything else. But before anyone else arrived, the officers observed Brandt moving frantically about the cab of the truck, reaching repeatedly toward the center console and looking over his shoulder at the officers.

---

[1] In this opinion, we discuss only the evidence that relates to the motion to suppress. Other evidence concerning the crimes of which Brandt and Kollie were convicted is detailed in our previous opinion. See *Kollie*, 301 Ga. App. at 534-537.

To keep the scene safe, the officers decided at that point to remove the occupants from the truck and secure them. With their weapons drawn, the officers instructed Kollie to exit the truck, and when he did so, the officers handcuffed him and put him in the back of a patrol car. The officers then directed Brandt to exit the truck, and although he initially failed to comply, he eventually exited the truck as well, was handcuffed, and was put into the second patrol car. After Kollie and Brandt were secured, the first officer approached the truck again to ensure that no one else was inside. As he did so, he saw several liquor bottles in the bed of the truck, the contents of which had spilled into the bed. And when he looked into the cab of the truck, he saw two firearms in plain view, one in the center console, the other on the floor, as well as some money bags.[2] The first officer retrieved and secured the firearms that he saw in plain view, but he did not undertake a more thorough search of the truck at that time.[3] Some Snellville officers arrived soon thereafter, and they impounded the truck and eventually searched the truck thoroughly, discovering additional evidence that implicated Kollie and Brandt in the Applebee's robbery, another restaurant robbery, and a home invasion. The Snellville officers also brought an eyewitness to the scene of the stop, where the eyewitness identified Kollie and Brandt as the robbers of the Applebee's restaurant. Before trial, Brandt moved to suppress the evidence recovered from the truck, contending that the officers lacked probable cause to arrest him and that the search was not, therefore, incident to a lawful arrest.

Like the court below, we conclude that the search of the truck was a reasonable one. When the Gwinnett County officers first stopped the truck, they had probable cause to believe that the driver had committed a violation of the traffic laws,[4] and for this reason, they had cause to stop it. See *Whren v. United States*, 517 U. S. 806, 810 (II) (116 SC 1769, 135 LE2d 89) (1996). After they stopped the

---

[2] At the hearing on the motion to suppress, the officer did not say explicitly that he was outside the truck when he saw these things, but he did say that they were in "plain view," and that generally connotes observation from a place in which an officer is entitled to be. In any event, Brandt does not appear on appeal to dispute that these items were in plain view, and considering our obligation to view the evidence in the light most favorable to the judgment of the court below, we understand the record to show that the officer saw these things from outside the truck. The record would support a finding that the officer was outside the truck, even if it also would permit a different finding. See *Baker v. State*, 306 Ga. App. 99, 101 (1) (a) (701 SE2d 572) (2010).

[3] One of the officers explained that, although he observed the contents of the truck that were in plain view and retrieved the firearms, he did not open any closed compartments or containers in the cab of the truck.

[4] As we noted earlier, both Gwinnett County officers had observed the truck traveling at a high rate of speed, and the second officer saw the driver momentarily lose control of the truck, weaving between lanes in the process.

truck and heard the additional radio dispatches about the restaurant robbery, they also had objective and particularized reasons to suspect that the occupants of the truck might be armed robbers.[5] See, e.g., *Boone v. State*, 282 Ga. App. 67, 70 (2) (637 SE2d 795) (2006) (radio dispatch concerning truck in which armed robbers had been seen, which described "the truck's color, number of occupants, road of travel, and direction of travel," gave officer reasonable suspicion to stop truck and investigate); *Faulkner v. State*, 277 Ga. App. 702, 704 (1) (627 SE2d 423) (2006) (radio dispatch concerning vehicle involved in criminal activity, which described "the color, manufacturer and model of the vehicle, the number and race of its occupants, and its location and direction of travel," gave officer reasonable suspicion to stop vehicle and investigate); *McNair v. State*, 267 Ga. App. 872, 874 (1) (600 SE2d 830) (2004) (radio dispatch concerning car observed leaving crime scene, which described the car, gave officer reasonable suspicion to stop similar car driving away from location of crime scene only minutes later and investigate). At that point, the officers had cause to detain Kollie and Brandt for further investigation, see *Culpepper*, 312 Ga. App. at 119-120, and the officers had every right to make the scene safe for their investigation, both by requiring Kollie and Brandt to exit the truck, see *Maryland v. Wilson*, 519 U. S. 408, 415 (117 SC 882, 137 LE2d 41) (1997), and by securing them with handcuffs and putting them in patrol cars. See *King v. State*, 258 Ga. App. 872, 875 (1) (575 SE2d 679) (2002).

After Kollie and Brandt were secured, the officers were entitled to approach the truck and look into it to see whatever contents might be in plain view. See *Parker v. State*, 229 Ga. App. 217, 219 (3) (493 SE2d 558) (1997). The first officer did so, and he saw two firearms and money bags in the truck, as well as liquor bottles and spilled liquor in the bed. With these observations, the officers might well have had probable cause to arrest Kollie and Brandt for armed robbery,[6] see *Gebremedhin v. State*, 202 Ga. App. 811, 812-813 (415 SE2d 529) (1992), but we need not decide that question. The officers undoubtedly had good cause to continue to detain Kollie and Brandt until Snellville officers arrived, at which point a witness identified Kollie and Brandt as the armed robbers, clearly supplying probable

---

[5] By that point, the officers knew that the truck occupied by Kollie and Brandt matched the description of the truck involved in the robbery, they knew that Kollie and Brandt matched the description of the robbers, they knew that the robbery had occurred only recently, they knew that the truck was driving fast along the road on which the restaurant was located and away from the restaurant, and they knew that the truck had accelerated when the first officer put his spotlight on it.

[6] By this time, the officers also had observed furtive movements by Brandt inside the cab of the truck and his initial refusal to comply with their lawful instruction to exit the truck.

cause for their arrest.[7] See *Brown v. State*, 307 Ga. App. 797, 801-802 (2) (706 SE2d 170) (2011). By then, there also was reason to believe that evidence of that crime might be found inside the truck, which was a proper basis for the more thorough search of the truck that followed.[8] See *Gant*, 556 U. S. at 343 ("[C]ircumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.") (citation and punctuation omitted). Accordingly, the search of the truck was reasonable, the motion to suppress properly was denied, and we affirm the judgment below.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 24, 2012.

*Mark A. Yurachek*, for appellant.
*Daniel J. Porter, District Attorney, Lisa A. Jones, Assistant District Attorney*, for appellee.

---

[7] The only thing of any significance that appears to have happened between the time the first Gwinnett County officer saw the firearms and other items in plain view and the time Kollie and Brandt were identified by an eyewitness as the robbers is that the first officer retrieved the firearms from the truck, and the officer was entitled at least to do that. See *State v. Peterson*, 273 Ga. 657, 658 (543 SE2d 692) (2001) ("The plain view doctrine . . . permits the warrantless seizure of evidence visible to a police officer who sees it from a vantage point the officer is legally entitled to occupy."); *Wise v. State*, 201 Ga. App. 412, 413 (411 SE2d 303) (1991) (physical precedent only) (when officer saw cocaine in plain view in vehicle, he was authorized to immediately seize it).

[8] The officers had reason to believe that evidence of the armed robbery might be found in the truck inasmuch as they had observed firearms and other potentially relevant items in plain view, besides the fact, of course, that the truck was stopped driving away from the scene of the robbery and only a short time after the robbery occurred.