**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 23, 2015**

# In the Court of Appeals of Georgia

A14A1837. THE STATE v. ALLEN.

DILLARD, Judge.

Jennifer Leigh Allen was arrested and charged, via accusation, with possession of methamphetamine. Allen filed a motion to suppress, challenging the lawfulness of the investigatory detention, during which she consented to the search of her purse where the methamphetamine was discovered. The trial court granted Allen's motion, and the State now appeals, arguing that the court erred in finding that the arresting law-enforcement officers had no reasonable, articulable suspicion to justify the detention. For the reasons set forth *infra*, we affirm.

Construing the evidence to uphold the trial court's findings and judgment,[1] the record shows that around 9:00 p.m. on July 25, 2012, a Paulding County sheriff's

---

[1] *See, e.g.*, *Hammont v. State*, 309 Ga. App. 395, 396 (710 SE2d 598) (2011).

deputy was patrolling a local shopping center parking lot in his marked vehicle when he noticed a red pickup truck, which he believed looked suspicious. Consequently, as he continued driving through the parking lot, the deputy ran the truck's tag number through the Georgia Crime Information Center ("GCIC") database, and, in doing so, learned that the truck's owner, William Couch, was wanted for a parole violation. The deputy then turned his vehicle around, at which point he saw the truck now parked and a male and a female, who appeared to have just exited the vehicle, walking toward a Mexican restaurant in the shopping center. Believing the male to be Couch, the deputy used his patrol vehicle's PA system to request that both individuals stop. The couple, however, ignored this request and continued into the restaurant.

After parking his vehicle and following the couple into the restaurant, the deputy saw the female, Allen, sitting alone in a booth, and one of the restaurant's employees informed the deputy that the male had exited out the back of the building. The deputy then approached Allen and asked her where Couch had gone. Allen replied that he was possibly in the restroom, but she was unsure of his whereabouts. But after checking the bathroom and determining that Couch was not there, the deputy ordered Allen to step outside for further questioning, and she complied. By this time, a second law-enforcement officer arrived on the scene, and during the

2

ensuing questioning, Allen acknowledged that Couch had mentioned that there was a warrant out for his arrest. The second officer then told Allen to call some of Couch's friends to inquire as to his whereabouts and ultimately asked Allen if he could search her purse. Allen consented, and during the search, the officer found a clear wrapper containing methamphetamine.

Allen was later charged, via accusation, with possession of methamphetamine.[2] Shortly thereafter, she filed a motion to suppress the evidence garnered as a result of her detention and subsequent consent to the search of her purse. Specifically, she argued that the officers had no reasonable, articulable suspicion to justify her detention, and, therefore, her consent to the search of her purse was invalid. Accordingly, she concluded that the methamphetamine found by the officers in her purse as a result of that search should be suppressed as "fruit of the poisonous tree."[3]

---

[2] *See* OCGA § 16-13-30 (a).

[3] We note that "[t]he 'fruit of the poisonous tree' doctrine provides that any evidence acquired by the police through exploitation of information obtained by means of unlawful conduct is inadmissible in a criminal prosecution." *Lawson v. State*, 299 Ga. App. 865, 868 (1) (684 SE2d 1) (2009); *see also Brown v. Illinois*, 422 U.S. 590, 603-04 (III) (95 SCt 2254, 45 LE2d 416) (1975) (providing test to determine whether evidence must be excluded under doctrine).

During the hearing on Allen's motion to suppress, the deputy who first saw Couch's truck and then followed Couch and Allen into the restaurant testified that when he initially approached Allen, he did not suspect that she had committed any crime, but nevertheless wanted to question her regarding Couch. The deputy then added that he believed Allen was untruthful when she said Couch may have gone to the bathroom, and thus, she impeded his investigation. In addition, the second officer who arrived on the scene (and ultimately searched Allen's purse) testified that Allen was not free to leave the encounter and that detaining someone with information was lawful even if that person was not suspected of engaging in criminal activity. After the hearing concluded, the trial court took the matter under advisement and, one day later, issued an order granting Allen's motion to suppress. This appeal by the State follows.

At the outset, we note that on a motion to suppress, "the burden of proving the search was lawful is on the [S]tate."[4] And in reviewing a trial court's decision on a motion to suppress, "we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the

---

[4] *Walker v. State*, 299 Ga. App. 788, 788 (683 SE2d 867) (2009); *accord Davis v. State*, 266 Ga. 212, 213 (465 SE2d 438) (1996).

witnesses are adopted unless they are clearly erroneous."[5] Additionally, because the trial court is the trier of fact, "its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them."[6] That said, we owe no deference to the way in which the court below "resolved questions of law."[7] With these guiding principles in mind, we turn now to the State's contention on appeal.

In its sole enumeration of error, the State maintains that the trial court erred in granting Allen's motion to suppress, arguing that the law-enforcement officers had reasonable, articulable suspicion to justify detaining Allen and, ultimately, seeking consent to search her purse. We disagree.

The Fourth Amendment to the United States Constitution provides, *inter alia*, that "[t]he right of the people to be secure in their persons, houses, papers, and

---

[5] *Hammont*, 309 Ga. App. at 396 (punctuation omitted); *accord Brown v. State*, 293 Ga. 787, 803 (3) (b) (750 SE2d 148) (2013).

[6] *Hammont*, 309 Ga. App. at 396 (punctuation omitted); *Brown*, 293 Ga. at 803 (3) (b).

[7] *Brandt v. State*, 314 Ga. App. 343, 343 (723 SE2d 733) (2012); *cf. Edenfield v. State*, 293 Ga. 370, 374 (2) (744 SE2d 738) (2013) (noting that in reviewing the denial of a motion to suppress a statement, appellate courts owe no deference to the way in which the trial court resolved questions of law).

effects, against unreasonable searches and seizures, shall not be violated. . . ."[8] In construing this amendment, the Supreme Court of the United States has set forth—including most notably in *Terry v. Ohio*[9]—three tiers of police-citizen encounters: "(1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause."[10]

In a first-tier encounter, police may "approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave."[11] Thus, a citizen's ability to "walk away

---

[8] U.S. Const. amend. IV.

[9] 392 U.S. 1, 21 (III) (88 SCt 1868, 20 LE2d 889) (1968).

[10] *Minor v. State*, 298 Ga. App. 391, 394 (1) (a) (680 SE2d 459) (2009) (punctuation omitted); *accord State v. Walker*, 295 Ga. 888, 889-890 (764 SE2d 804) (2014).

[11] *Minor*, 298 Ga. App. at 394 (1) (a) (punctuation omitted); *accord Jones v. State*, 291 Ga. 35, 37 (1) (727 SE2d 456) (2012) (noting that a first-tier encounter may become a seizure when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave" (punctuation omitted)).

6

from or otherwise avoid a police officer is the touchstone of a first-tier encounter."[12] But here, the deputy who observed Allen and Couch walking toward the restaurant first requested that they stop, then approached Allen as she sat in a booth and, shortly thereafter, directed her to accompany him outside. Given these circumstances, no reasonable person in Allen's position would have felt free to end the encounter, and, in fact, the second officer to arrive on the scene explicitly testified at the hearing that Allen was not free to leave. Accordingly, the officers' stop of Allen "was a second-tier, investigative detention that required the [officers] to have a particularized and objective basis for suspecting that [Allen] was or was about to be involved in criminal activity."[13]

As the Supreme Court of the United States emphasized in *Terry*,[14] a law-enforcement officer, "even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for

---

[12] *Thomas v. State*, 301 Ga. App. 198, 201 (1) (687 SE2d 203) (2009) (punctuation omitted); *accord Jones*, 291 Ga. at 37 (1).

[13] *Thomas*, 301 Ga. App. at 201-02 (1); *see also Walker v. State*, 299 Ga. App. 788, 790 (683 SE2d 867) (2009).

[14] *See Terry*, 392 U.S. at 21 (III).

suspecting the persons are involved in criminal activity."[15] In doing so, the officer's action must be justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing."[16] Furthermore, while a mere hunch is not sufficient to render an investigative detention reasonable, "law enforcement officers are permitted to draw upon their own experience and training in assessing the circumstances in which they find themselves."[17]

In the case *sub judice*, the deputy who first saw Couch's pickup truck ran its tags through the GCIC database and determined that he was wanted for a parole violation. Recounting this fact, the State argues that the deputy was, therefore,

---

[15] *Black v. State*, 281 Ga. App. 40, 43 (1) (635 SE2d 568) (2006) (punctuation omitted); *see Ramirez v. State*, 279 Ga. 569, 571-72 (1) (619 SE2d 668) (2005) (noting that officer had particularized and objective basis for suspecting that defendant was engaged in criminal activity and, thus, holding that the stop was justified).

[16] *Black*, 281 Ga. App. at 43 (1) (punctuation omitted); *see also State v. Harris*, 261 Ga. App. 119, 122 (581 SE2d 736) (2003).

[17] *Culpepper v. State*, 312 Ga. App. 115, 119 (717 SE2d 698) (2011); *see also Esposito v. State*, 293 Ga. App. 573, 576 (667 SE2d 425) (2008).

8

authorized to initiate a traffic stop.[18] However, by the time the deputy learned that the truck's male owner, Couch, was wanted, the truck was already stopped and Couch and Allen were walking toward the restaurant. At that point, although the deputy certainly possessed a reasonable, articulable suspicion to detain Couch, he had no basis whatsoever for believing that Allen was either committing, or was about to commit, a crime.[19] Indeed, at the motion-to-suppress hearing, the deputy admitted that when he first approached Allen, as she sat in the restaurant booth, he had no suspicion that she had committed, or was about to commit, a crime. And while the deputy added that he believed Allen was untruthful when she told him that she was unsure as to where Couch had gone, the trial court, in granting Allen's motion to suppress,

---

[18] *See Humphreys v. State*, 304 Ga. App. 365, 367 (696 SE2d 400) (2010) (holding that "the particularized and objective basis for the initial stop was the information from GCIC—in this case, that the male owner of the registered vehicle he was operating had a suspended driver's license"); *see also Ramirez v. State*, 279 Ga. at 571-72 (1).

[19] *Cf. Brown v. State*, 301 Ga. App. 82, 85 (686 SE2d 793) (2009) (holding that none of defendant's described activities, *i.e.*, walking faster away from the police, ignoring the police officer calling his name, or being present in an area known for its propensity for criminal activity, is a crime in and of itself, nor are they enough to make an objective determination that defendant was about to be engaged in criminal activity); *Teal v. State*, 291 Ga. App. 488, 489 (662 SE2d 268) (2008) (holding that officer lacked reasonable basis for concluding that passenger was armed or was otherwise a threat to his personal safety after another officer had stopped car to serve warrant on driver, and, thus, *Terry* pat-down for weapons was unlawful).

9

obviously found that her response did not provide an objective basis for a reasonable suspicion that she was obstructing the deputy in the lawful discharge of his official duties.[20] Thus, construed most favorably to uphold the trial court's judgment, we conclude that the court did not err in finding that the officers' detention of Allen was unreasonable.[21] Moreover, because Allen's consent to the search of her purse was the product of an illegal detention, it was not valid.[22] Accordingly, the trial court did not err in granting Allen's motion to suppress.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur*.

---

[20] *See Beckom v. State*, 286 Ga. App. 38, 41-42 (2) (648 SE2d 656) (2007) (holding that defendant initially refusing to answer the door for officers and denying knowledge of missing boy's whereabouts, even though it was later determined that boy was one of the attendees of defendant's son's party, did not constitute obstruction); *cf. Duke v. State*, 205 Ga. App. 689, 690 (423 SE2d 427) (1992) (holding that willfully lying to officers attempting to execute a warrant by asserting that arrestee was not on the premises constituted obstruction).

[21] *See State v. Mincher*, 313 Ga. App. 875, 877-78 (723 SE2d 300) (2012) (holding that trial court was authorized to find that defendant's right turn was not illegal and thus officer had no reasonable articulable suspicion to justify traffic stop).

[22] *See Walker v. State*, 299 Ga. App. 788, 791 (2) (683 SE2d 867) (2009) (holding that defendant's consent to search of his person was invalid when it was the product of an illegal detention); *Black*, 281 Ga. App. at 47-48 (1) (holding that consent to search of bedroom only a few moments after being unlawfully detained was invalid).