S03A1501. THE STATE v. POPPELL.
(592 SE2d 838)

HUNSTEIN, Justice.

The State indicted Gary Christopher Poppell on charges of felony murder and misuse of a firearm while hunting arising out of the shooting death of Frank Henry Parker. The trial court suppressed the results of Poppell's blood tests and the State appeals. OCGA § 5-7-1 (a) (4). Finding no error, we affirm the trial court's ruling.

1. Contrary to the State's contention, our review of Poppell's motion reveals that it was not fatally defective under OCGA § 17-5-30 (b) for failing to set forth sufficient facts. See generally *Stanley v. State*, 206 Ga. App. 125 (1) (424 SE2d 90) (1992).

2. " 'A suspect's Fourth Amendment right to be free of unreasonable searches and seizures applies to the compelled withdrawal of blood.' [Cit.] So too is the extraction of blood a search within the meaning of the Georgia Constitution. [Cit.]" *Cooper v. State*, 277 Ga. 282, 285 (III) (587 SE2d 605) (2003). The evidence presented at the motions hearing reflected that while Poppell was a passenger in a

---

vehicle being driven on a hunting club's property, he heard a noise, exited the vehicle and fired a shot into the bushes. Poppell's shot hit Frank Henry Parker and inflicted a fatal wound. Poppell and the driver of the vehicle contacted 911 and drove the victim to a nearby road, where ambulance and police were able to reach them. One of the first police officers to arrive at the scene testified that Poppell appeared to be sober and coherent and not under the influence of alcohol or narcotics; one can of beer was found in the vehicle. Poppell was taken to the Long County Sheriff's Department. Although several officers who were present at that time testified at the motions hearing, none of the officers personally asked Poppell for his consent to draw and test his blood, nor could any recall whether any other officer obtained Poppell's consent. At some point Deputy Shane Middleton, in response to an order by another unidentified officer, took Poppell to a local hospital where a medical lab technician drew Poppell's blood. No warrant was obtained for the blood sample.

In light of the evidence adduced, we find no error in the trial court's ruling that Poppell did not consent to the taking of his blood prior to its extraction. We do not agree with the State that the hospital consent form the medical lab technician testified that Poppell must have signed[1] before she extracted his blood can serve as Poppell's consent for the State to take that blood sample and test it for alcohol and narcotics. See *Turpin v. Helmeci*, 271 Ga. 224 (518 SE2d 887) (1999) (test results of a sample taken from a suspect may not be used for purposes for which the suspect was not advised and to which he did not consent); *State v. Gerace*, 210 Ga. App. 874, 875 (2) (437 SE2d 862) (1993) ("consent for one purpose does not mean consent for ANY purpose"). See also *Beasley v. State*, 204 Ga. App. 214, 216 (1) (419 SE2d 92) (1992) (consent not voluntary when premised on "incomplete and thus deceptively misleading information").

3. The testimony at the motions hearing established that after his blood was taken, Poppell was returned to the sheriff's department. GBI Special Agent Jennings testified that at that time he advised Poppell of his *Miranda* rights and obtained Poppell's consent to having his blood taken to test for any narcotics or alcohol.[2] Poppell waived his *Miranda* rights, gave an oral statement and signed a written version of his statement. There was no reference to the blood testing in Poppell's statement. The blood sample was later sent to a GBI laboratory where the tested blood revealed no alcohol but returned a

---

[1] No hospital consent form was introduced into evidence.

[2] Agent Jennings originally testified that he obtained Poppell's consent prior to the blood being taken. However, on cross-examination it was established that the agent did not arrive on the scene until after Poppell returned from the hospital and the agent admitted that he "st[oo]d corrected as far as when the time of the actual test was administered."

faint positive for the presence of cocaine metabolites.

The State argues that the blood test results were admissible because Poppell consented, after the blood was taken, to the taking and testing of his blood. In assessing this argument, we look to *Brown v. Illinois*, 422 U. S. 590 (95 SC 2254, 45 LE2d 416) (1975) and Georgia appellate cases addressing the analysis to be applied when a suspect's consent is obtained following an illegal search, seizure or arrest. See, e.g., *Brown v. State*, 261 Ga. App. 351 (2) (582 SE2d 516) (2003); *Pledger v. State*, 257 Ga. App. 794 (572 SE2d 348) (2002); *Von-Linsowe v. State*, 213 Ga. App. 619 (2) (445 SE2d 371) (1994); *Rogers v. State*, 206 Ga. App. 654 (4) (426 SE2d 209) (1992). As these cases recognize, the State was obligated to establish both that Poppell's consent to the taking and testing of his blood was voluntary and also that his consent was not the product of the illegal seizure, but rather was "'sufficiently an act of free will to purge the primary taint.' [Cit.]" *Brown v. Illinois*, supra, 422 U. S. at 602.

> [I]n order to eliminate any taint from an involuntary seizure or arrest, there must be proof both that the consent was voluntary and that it was not the product of the illegal detention. Proof of a voluntary consent alone is not sufficient. The relevant factors include the temporal proximity of an illegal seizure and consent, intervening circumstances, and the purpose and flagrancy of the official misconduct. . . .

[Cits.] *Pledger*, supra, 257 Ga. App. at 800.

After hearing the evidence adduced at the motions hearing, the trial court held that the State failed to carry its burden of proving that under the totality of the circumstances Poppell's consent was voluntary. See *State v. Tye*, 276 Ga. 559 (1) (580 SE2d 528) (2003) (when relying on consent exception to the warrant requirement, the State has burden of proving accused acted freely and voluntarily under the totality of the circumstances). The trial court noted that although Agent Jennings testified that other officers were present when the agent asked Poppell's consent to have his blood taken and tested, none of the other officers could recall any conversation about a blood test. The court also noted that the agent's request was made in a "very brief and limited exchange" and that Poppell "was never advised as to the purpose of the test, why it was being requested, or whether or not he had the right to refuse such a request."[3]

---

[3] It is not always essential under the Fourth Amendment for a person to be told that he or she may refuse to consent to a warrantless search. *Schneckloth v. Bustamonte*, 412 U. S. 218, 227 (II) (B) (93 SC 2041, 36 LE2d 854) (1973); *Woodruff v. State*, 233 Ga. 840 (3) (213 SE2d 689) (1975). However, we have recognized that informing an individual of the right to

Construing the evidence most favorably to uphold the trial court's findings and judgment, the trial court's conclusion that Poppell did not make a free and voluntary decision to consent to the blood test was not clearly erroneous. See generally *State v. Tye*, supra, 276 Ga. at 562 (2). Accordingly, we affirm the trial court's grant of Poppell's motion.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 16, 2004.

*J. Tom Durden, Jr., District Attorney, Lewis M. Groover, Jr., Mark A. Hendrix, Assistant District Attorneys*, for appellant.

*Osteen & Osteen, James N. Osteen, Jr., Christopher J. Osteen*, for appellee.

refuse consent is a factor a trial court may consider in determining whether such consent was voluntary. *State v. Tye*, supra, 276 Ga. at 560; *Martinez v. State*, 239 Ga. App. 662, 663 (522 SE2d 53) (1999). See also Daniel, Georgia Criminal Trial Practice, § 4-31 (2001 ed.). Accordingly, the trial court here did not err by taking into consideration the failure of the GBI agent to provide Poppell with this information.