A09A1796. BROWN v. THE STATE.
(686 SE2d 793)

ELLINGTON, Judge.
A Cobb County jury found James Thomas Brown guilty of possession of cocaine, in violation of the Georgia Controlled Substances Act, OCGA § 16-13-30 (a). Brown appeals, challenging the trial court's denial of his motion to suppress. For the following reasons, we reverse.

> When reviewing a trial court's decision on a motion to
> suppress, this [C]ourt's responsibility is to ensure that
> there was a substantial basis for the decision. The evidence
> is construed most favorably to uphold the findings and

judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Citations and punctuation omitted.) *Lambright v. State*, 226 Ga. App. 424, 424-425 (487 SE2d 59) (1997).

Viewed in the light most favorable to the trial court's ruling, the record shows the following. On February 2, 2008, an officer responded to a domestic call at an apartment complex in Cobb County that is located in an area known for heavy drug and criminal activity. Around 9:00 p.m., when the officer was returning to his car, he noticed Brown walking through the parking lot. Brown was walking toward the officer, and upon seeing him, dropped his head and started to walk faster away from the officer. The officer thought it was suspicious for Brown to be walking through the parking lot, because he knew Brown was not a resident. The officer decided to stop Brown and ask him why he was in the complex. The officer called out to Brown, saying "Hey, hey James, What are you doing?" Brown appeared to ignore the officer and walked away. The officer called to Brown a second time, and Brown stopped.[1] The officer asked Brown where he was going, and Brown replied that he was "cutting through" the parking lot. The officer then asked Brown to take his hands out of his pockets, but Brown did not comply. The officer asked Brown to take his hands out of his pockets a second time, and then immediately asked him if he had any weapons. Brown replied "Yes," but quickly changed his answer to "No." When the officer drew his weapon and specifically asked Brown if he had a gun, Brown replied "No." The officer ordered Brown to remove his hands from his pockets, and then told him to walk to the officer's patrol car. Brown removed his left hand from his pocket and threw an object to the ground. Brown then walked to the patrol car where the officer detained him with handcuffs. After other units arrived on the scene, the officer recovered the object Brown had thrown down. It was determined to be a crack pipe.

On appeal, Brown contends that his Fourth Amendment rights were violated because the officer did not have a particularized and objective basis for suspecting that he was engaged in criminal activity when Brown spotted the officer and walked quickly in

---

[1] The officer's testimony about whether Brown stopped voluntarily or whether the officer told Brown to stop is inconsistent throughout the motion to suppress hearing and Brown's trial. The trial court determined in its order that Brown stopped voluntarily, and this Court is bound by that determination.

another direction. Specifically, Brown argues that, under the circumstances, he should have been able to walk away and ignore the officer's questions and the order to stop.

> United States Supreme Court holdings sculpt out, at least theoretically, three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause. In the first tier, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. The second tier occurs when the officer actually conducts a brief investigative *Terry*[2] stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity.

(Citations, punctuation and footnotes omitted.) *Holmes v. State*, 252 Ga. App. 286, 287-288 (556 SE2d 189) (2001).

In this case, Brown voluntarily stopped to speak with the officer. At that point, their interaction was a first-tier encounter and no articulable suspicion was required. It was permissible for the officer to question Brown because Brown was free to walk away and avoid the encounter. *State v. Harris*, 261 Ga. App. 119, 121-122 (581 SE2d 736) (2003) (holding that when a police officer approached the defendant after seeing him go into a hotel room and then walk back into the breezeway, the officer's approach was a first-tier encounter because "so long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required") (punctuation and footnote omitted).

What began as a first-tier encounter escalated into a second-tier stop when the officer told him to remove his hands from his pockets. During a second-tier encounter, a police officer may stop a person and briefly detain him or her if the officer has a "particularized and objective basis for suspecting the [person is] involved in criminal

---

[2] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

activity." (Punctuation and footnote omitted.) *State v. Harris*, 261 Ga. App. at 121. To make a second-tier stop, however, a police officer must possess more than a "subjective, unparticularized suspicion or hunch. The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant . . . intrusion[.]" (Punctuation and footnote omitted.) Id. at 121-122. Further, the court must be able to determine that the detention was "neither arbitrary nor harassing." (Punctuation and footnote omitted.) Id. at 122. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." (Punctuation and footnote omitted.) Id. Moreover, in determining whether the stop was justified by reasonable suspicion, the "totality of the circumstances — the whole picture — must be taken into account." (Citations and punctuation omitted.) *Lambright v. State*, 226 Ga. App. at 426 (1).

When the officer told Brown to remove his hands from his pockets, the first-tier encounter escalated into a second-tier encounter involving temporary restraint. Therefore, the continued detention had to be supported by articulable suspicion. *Holmes v. State*, 252 Ga. App. at 286-288. At the motion to suppress hearing, the officer testified that his articulable suspicion was based on his past experience with Brown, Brown's presence in the apartment complex when he was not a resident, and the fact that the area was known for its drug and criminal activity. The officer was also concerned because Brown saw him and quickly walked in a direction that was away from his residence. Additionally, the officer noticed that Brown was wearing both a hooded sweatshirt and a jacket, and he believed this to be suspicious.

The above facts, however, when taken together with their rational inferences, do not amount to articulable suspicion of criminal activity because there was no objective manifestation that Brown was either committing, or was about to commit, a crime. None of Brown's described activities, i.e., walking faster away from the police officer, ignoring the police officer, or being present in an area known for its propensity for drugs and criminal activity, is a crime in and of itself, nor are they enough to make an objective determination that Brown was about to be engaged in criminal activity. See *Holmes v. State*, 252 Ga. App. at 288-289 (holding that there was no objective manifestation that the defendant was or was about to be engaged in criminal activity merely because he approached the passenger side of an unmarked police car in an area known for its drug and criminal activity, appeared to change his mind when he saw the officer's police vest, and instead walked to a car parked on the side of the road); *Peters v. State*, 242 Ga. App. 816, 817 (1) (531 SE2d 386) (2000)

(holding that the requisite articulable suspicion was not present when the defendant did not flee from officers in an area known for heavy drug sales, but rather hurried toward his car, just as he was doing before seeing the officers).

Furthermore, we note that it is not a crime to cut through a parking lot, to be present in an apartment complex where you do not live, nor to wear both a hooded sweatshirt and a jacket during the month of February. In this case, "no evidence was introduced that such activity violated any local ordinance or other applicable law, or that there was any other basis for the stop." (Punctuation and footnote omitted.) *Smith v. State*, 245 Ga. App. 613, 615-616 (538 SE2d 517) (2000). Even when considering the totality of the circumstances, these facts do not amount to an objective, articulable suspicion of criminal activity. At best, they represent an officer's well-honed intuition, or "hunch." See *State v. Harris*, 261 Ga. App. at 122-123.

As such, the second-tier encounter between Brown and the officer was unlawful for lack of articulable suspicion and the trial court erred in denying Brown's motion to suppress evidence garnered from the stop. *Holmes v. State*, 252 Ga. App. at 288-289; *Peters v. State*, 242 Ga. App. at 817.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 23, 2009 —
RECONSIDERATION DENIED NOVEMBER 17, 2009 —

*Jeffrey W. Frazier, Kenneth R. Croy*, for appellant.

*Patrick H. Head, District Attorney, Gregory L. Epstein, John R. Edwards, Assistant District Attorneys*, for appellee.