**THIRD DIVISION**
**MILLER, J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**January 31, 2013**

# In the Court of Appeals of Georgia

A12A1740. CARTER v. THE STATE.

RAY, Judge.

Following a jury trial, Bruce Brunell Carter was convicted of possession of cocaine in violation of the Georgia Controlled Substances Act.[1] He contends that the trial court erred in denying his motion to suppress evidence seized pursuant to a search of his person. For the reasons that follow, we affirm.

In reviewing a trial court's ruling denying a motion to suppress, the following three principles apply: First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and

---

[1] OCGA § 16-13-30 (a).

credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. Because there was testimonial evidence in this case, we do not apply a de novo standard of review.[2]

So viewed, the evidence adduced at the hearing on the motion to suppress shows that, on December 13, 2009, a Gwinnett County police officer was on patrol in an area known for having high levels of drug traffic and prostitution, and where the officer had previously made numerous arrests or picked up wanted persons. At approximately 7:30 p.m., after dark, he noticed Carter pacing back and forth near a Dumpster behind a business that the officer believed to be closed. The officer thought that Carter might be casing the business, or waiting to do a drug deal. When the officer approached and asked Carter what he was doing, Carter said he was just hanging out. The officer then asked Carter if he had a weapon, and Carter said he had a Leatherman tool. The officer testified that he knew from experience that such tools generally have two or three folding knives in them. The officer asked if he could retrieve the Leatherman. Carter said yes and pointed to his pocket. When the officer

---

[2] (Punctuation and footnote omitted; emphasis omitted.) *Ware v. State*, 309 Ga. App. 426, 426 (710 SE2d 627) (2011).

2

pulled out the Leatherman, a baggie was pinched in its folding mechanism. The officer asked what was in the baggie, and Carter replied that it was probably crack cocaine. The officer field-tested the substance, which tested positive for cocaine.

In his sole enumeration of error, Carter asserts that the trial court erred in denying his motion to suppress evidence, arguing that the officer stopped and searched him without a particularized and objective basis for suspecting that he was engaged in criminal activity, and that the State did not meet its burden of proving the search was lawful pursuant to OCGA § 17-5-30 (b). We find no error.

"There are at least three types of police-citizen encounters: verbal communications that involve no coercion or detention; brief 'stops' or 'seizures' that must be accompanied by a reasonable suspicion; and 'arrests,' which can be supported only by probable cause."[3]

> A first-tier encounter never intrudes upon any constitutionally protected interest since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without reasonable suspicion. Reasonable suspicion exists

---

[3] Id. at 427.

when an officer has a particularized and objective basis for suspecting that a citizen is involved in criminal activity. Moreover, a "seizure" within the meaning of the Fourth Amendment only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave.[4]

Carter contends that this was a second-tier stop, and as such was constitutionally improper because the officer lacked a particularized and objective basis for suspecting that he was involved in or was about to be involved in criminal activity. Carter further argues that his consent to the search of his person was invalid because it was the product of an illegal second-tier detention. Carter's argument fails because the evidence supports a finding that this was a first-tier encounter.

In a first-tier encounter, "police may approach citizens, ask for identification, *ask for consent to search*, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave."[5] Contrary to Carter's contentions, "a request to search made during the course of a first-tier encounter does not transform

---

[4] (Citations omitted.) *State v. Folk*, 238 Ga. App. 206, 207 (521 SE2d 194) (1999) (whole court).

[5] (Citation, footnote, and punctuation omitted; emphasis supplied.) *Minor v. State*, 298 Ga. App. 391, 394 (1) (a) (680 SE2d 459) (2009).

4

the encounter into a second-tier . . . stop. It is clear that merely requesting consent for a search is not a seizure and does not require articulable suspicion."[6]

When the State seeks to justify a warrantless search on grounds of consent, it must prove that the consent was freely and voluntarily given and not merely acquiescence to a claim of lawful authority.[7] Here, the officer testified that when he asked Carter if he had a weapon and if he could retrieve it, Carter was not under arrest or detention, did not refuse to talk to him, and did not attempt to walk away. Counsel for the State asked the officer, "[W]ould you say [Carter] was free to leave at all times until you found this powder substance?" to which the officer replied, "That's correct. He could have walked away." Here, there was no evidence that the officer restrained Carter's movements by physical force or a show of authority. Given these

---

[6] (Citation and punctuation omitted.) *Whiting v. State*, 275 Ga. App. 251, 253 (620 SE2d 480) (2005).

[7] *Ware*, supra at 428-429.

circumstances, no particularized or objective suspicion was required,[8] and the State met its burden of showing valid consent.[9]

"A valid consent eliminates the need for either probable cause or a search warrant. Moreover, once a voluntary consent is legally obtained, it continues until it either is revoked or withdrawn."[10] Given Carter's consent to the search, the officer had a valid prior justification for his intrusion into Carter's pocket, where he inadvertently discovered the baggie with crack cocaine residue in it when he retrieved the Leatherman to which the baggie was attached. Carter admitted it contained crack cocaine. Only after Carter admitted that the baggie contained crack cocaine did the officer place Carter in handcuffs and seize the baggie to field test its contents.

---

[8] *Minor*, supra at 394-395 (1) (a). The cases that Carter cites to show that this was a second-tier encounter are inapposite, as these cases involve detentions and Carter on appeal points to no facts showing that he was detained. See *Walker v. State*, 299 Ga. App. 788, 790 (1) (683 SE2d 867) (2009) (officer told defendant to "'hold on . . . come here,' and sit on the pavement, and . . . then asked [him] questions pursuant to a 'field investigation'"); *Brown v. State*, 301 Ga. App. 82, 83 (686 SE2d 793) (2009) (after defendant denied having a weapon, officer drew his gun and told defendant to walk to the patrol car); *Barnes v. State*, 228 Ga. App. 44, 44-45 (491 SE2d 116) (1997) (police asked defendant to stop, "started tussling" with him, took a box containing crack cocaine from him, and told him to place his hands on the car).

[9] See *Brint v. State*, 306 Ga. App. 10, 13 (2) (701 SE2d 507) (2010).

[10] (Footnote omitted.) *Ware*, supra at 428.

6

Because the incriminating evidence was in plain view when the officer removed the Leatherman from Carter's pocket, the officer was authorized to seize the baggie.[11]

To the extent that Carter's testimony about the incident differs from the police officer's testimony, it is well-settled that on appeal, we must accept a trial court's decision regarding questions of fact and witness credibility unless it is clearly erroneous.[12] Here, the trial court did not err in denying Carter's motion to suppress.

*Judgment affirmed. Miller and Branch, JJ., concur.*

---

[11] See *Buchanan v. State*, 259 Ga. App. 272, 273-274 (576 SE2d 556) (2002) (trial court did not err in denying motion to suppress where officer seized plastic bag containing cocaine after it fell out of defendant's pocket and was in plain view).

[12] *Ware*, supra at 426.