**WHOLE COURT**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 19, 2013**

# In the Court of Appeals of Georgia

A13A1434. HERNANDEZ-ESPINO v. THE STATE.

McFADDEN, Judge.

We granted Jose Herminio Hernandez-Espino's application for interlocutory review of the trial court's denial of his motion to suppress crack cocaine found in his pocket during a search to which he consented. We agree with Hernandez-Espino that his consent to the search was tainted because it occurred during an unlawful second-tier encounter with law enforcement officers. Accordingly, we reverse.

"[T]he burden of proving a search was lawful is on the state. The state thus has the burden of proving the validity of a consensual search. Moreover, we are required to scrutinize closely an alleged consent to search." *Foster v. State*, 285 Ga. App. 441, 442 (646 SE2d 302) (2007) (citations and punctuation omitted). In reviewing the denial of a motion to suppress on appeal, "we owe no deference to the way in which

the trial court resolved questions of law, but we generally accept its findings about questions of fact and credibility unless clearly erroneous." *Edenfield v. State*, __ Ga. __, __ (2) (__ SE2d __) (Case No. S13P0210, decided June 17, 2013) (citation and footnote omitted).

The only evidence presented at the hearing on Hernandez-Espino's motion to suppress was the testimony of a law enforcement officer. He testified that on February 7, 2012, he and another officer were working an extra shift at an apartment complex that had been experiencing problems with crime, including drug activity. The officer was wearing his police uniform and an armored vest and was carrying his weapon. Around 9 p.m., he saw Hernandez-Espino emerge from a building that he testified had been identified as a location in which narcotics were sold. The officer approached Hernandez-Espino and asked if he lived in the complex. Hernandez-Espino replied that he did not, but that he was there visiting a friend. The officer asked for the friend's name, and Hernandez-Espino said he did not know but pointed to an apartment.

The officer, who was familiar with the residents of that apartment, testified that he "just knew that [Hernandez-Espino] wasn't telling the truth." He said to Hernandez-Espino, "man, just give me the drugs you just bought." Hernandez-Espino

2

denied having any drugs. The officer then asked for consent to search, and Hernandez-Espino agreed. The officer found crack cocaine in Hernandez-Espino's pocket.

Hernandez-Espino argues that the trial court erred in denying his motion to suppress evidence of the crack cocaine, because that evidence was the product of an illegal search. Specifically, he argues that the officer escalated their encounter to a second-tier encounter by demanding that Hernandez-Espino "give [him] the drugs [he] just bought," that the officer lacked the reasonable articulable suspicion required for a second-tier encounter, and that the unlawful second-tier encounter tainted his consent. We agree.

1. *The encounter escalated to a second-tier encounter.*

In construing [the Fourth Amendment to the United States Constitution], the Supreme Court of the United States has set forth – including most notably in *Terry v. Ohio*[, 392 U.S. 1, 21 (III) (88 SCt 1868, 20 LEd2d 889) (1968)] – three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.

3

*In the Interest of J.B.*, 314 Ga. App. 678, 680 (1) (725 SE2d 810) (2012) (citation and punctuation omitted).

The initial contact between the officers and Hernandez-Espino was a first-tier encounter. "In the first tier, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave." *State v. Dukes*, 279 Ga. App. 247, 248-249 (630 SE2d 847) (2006) (citation omitted).

When the officer stated, "give me the drugs you just bought," however, he escalated the encounter to the second tier.

> In determining whether a police-citizen encounter constituted a [second-tier] seizure, a court must answer whether, considering all the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.

*Cutter v. State*, 274 Ga. App. 589, 592 (1) (617 SE2d 588) (2005) (citation omitted). Circumstances that might demonstrate a second-tier encounter include "the use of language or tone of voice indicating compliance with the officer's request might be compelled." Id. (citation omitted). Accordingly, we have found that a second-tier

4

encounter occurred in circumstances where an officer used imperative language that directed a citizen to take a particular action. See *Brown v. State*, 301 Ga. App. 82, 84-85 (686 SE2d 793) (2009) (officer directed defendant to remove his hands from his pockets, thereby escalating encounter from first tier to second tier).

The officer in this case, who was uniformed and carrying a weapon, approached Hernandez-Espino and, after a brief conversation, ordered him to take a particular action: "give me the drugs you just bought." The officer used those exact words. The evidence that he did so is uncontroverted. He put them in quotation marks in his police report. At the hearing he testified three times that those were his words. And the officer's testimony went on to dispel any doubt that those words were an order. Asked on direct examination if he had, "testified that you asked him if he had just bought some drugs," the officer interjected a correction: "No I didn't ask him if he bought drugs. I told him to give me the drugs he just bought."[1] On cross he agreed to defense counsel's characterization of those words as a demand. Defense counsel

---

[1] Contrary to the dissent, it is of no significance that this testimony was preceded by testimony that the conversation was in English. Hernandez-Espino's ability to speak English was at issue, and the prosecutor interspersed questions about his use of it throughout her presentation of the case.

5

asked: "[T]hat's when you make the demand, [']give me the drugs you just bought['];

correct?" The officer responded: "Correct."

We therefore conclude that the officer's words were not a request that

Hernandez-Espino was free to ignore. The officer's conduct and statement "would

have communicated to a reasonable person that the person was not free to decline the

officers' requests or otherwise terminate the encounter." *Cutter*, 274 Ga. App. at 592

(1) (citation omitted). Compare *Owens v. State*, 192 Ga. App. 671, 673-674 (1) (385

SE2d 761) (1989) (circumstances showed first-tier encounter where plain-clothed

officers who were not displaying guns walked up beside airline passenger in airport

and asked for, rather than demanded, his ticket and identification).

Contrary to the dissent, we may not defer to the trial court's characterization

of the encounter as first-tier. We must employ a de novo review because the evidence

was uncontroverted and nothing in the trial court's order suggested that it questioned

the credibility of the officer, who was the sole testifying witness. See *Jones v. State*,

291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012) ("When the evidence at a suppression

hearing is uncontroverted and the credibility of witnesses is not in question, we

conduct a de novo review of the trial court's application of law to the undisputed

facts.") (citation omitted); *Corey v. State*, 320 Ga. App. 350, 350-351 (739 SE2d 790)

6

(2013) (applying de novo standard of review where only evidence is officer's undisputed testimony and officer's credibility has not been challenged). Moreover, the trial court made no finding on the dispositive issue of whether "a reasonable person in [Hernandez-Espino's] position would have felt free to decline the officer's [direction to give him the drugs] or otherwise terminate the encounter," as required for a first-tier encounter. *Thomas v. State*, 301 Ga. App. 198, 200 (1) (687 SE2d 203) (2009) (citation and punctuation omitted). Instead, the trial court found that the encounter remained first-tier because Hernandez-Espino himself did not consider the officer's statement to be a command, which the trial court concluded because Hernandez-Espino did not respond by handing over drugs. Whether an officer-citizen encounter is a first- or second-tier encounter, however, is not governed by the citizen's willingness to comply with the officer. See *Walker v. State*, __ Ga. App. __, __ (1) (a) (__ SE2d __) (Case No. A13A0444, decided July 12, 2013) (officer's command that defendant remove hands from pockets turned first-tier encounter into second-tier stop requiring reasonable articulable suspicion, even though defendant did not comply with command).

To find that the encounter in this case remained first-tier, we would have to assume that, despite the officer's uncontroverted testimony that he commanded

Hernandez-Espino to give him the drugs, the officer used a tone of voice that gave those words a different meaning. The trial court made no such finding and nothing in the record gives us a basis for reaching such a conclusion on de novo review.

This is not a close case. We are not called upon to draw a close, technical distinction. The officer's words were a command, and there is no evidence that they were anything other than a command. But even if this were a close case and we were called upon to draw a fine line, it would be our duty to draw such a line.

> The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard. . . .

*Terry v. Ohio*, supra, 392 U.S. at 21-22 (III) (footnote omitted).

2. *The officer lacked reasonable, articulable suspicion for a second-tier encounter.*

The officer lacked the reasonable, articulable suspicion required for a second-tier encounter with Hernandez-Espino.

8

[A] second-tier, investigative detention . . . require[s] the officer to have a particularized and objective basis for suspecting that [the citizen] was or was about to be involved in criminal activity. To stop a citizen, the officer must possess more than a subjective, unparticularized suspicion or hunch. The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing. This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence.

*Thomas*, 301 Ga. App. at 201(1) (citations and punctuation omitted).

At the motion hearing, the officer testified that he saw Hernandez-Espino emerge from an apartment building known for drug activity and that he believed Hernandez-Espino was lying about his reasons for being there, because Hernandez-Espino did not know the name of the person whom he said he had been visiting (a person who was, in fact, known to the officer). But

it is well established that mere presence in an area of suspected crime is not enough to support a reasonable, particularized suspicion that the person is committing a crime. Moreover, an officer's feeling that a person is acting in a suspicious way does not amount to a particularized and objective basis for suspecting him of criminal activity.

9

*Ewumi v. State*, 315 Ga. App. 656, 661 (1) (727 SE2d 257) (2012) (citations and punctuation omitted).

This principle reflects a foundational decision to sacrifice a little safety to purchase liberty. We have applied it in many cases to find that an officer lacked support for a second-tier encounter. For example, in *Brown v. State*, 301 Ga. App. 82, 85-86 (686 SE2d 793) (2009), we found that an officer's past experience with the defendant, the defendant's presence as a non-resident at an apartment complex known for drug and criminal activity, the defendant's attire, and the defendant's avoidance of the officer did not give the officer the requisite reasonable, articulable suspicion. In *Thomas v. State*, supra, 301 Ga. App. at 201-202 (1), we found that an officer's observation of the defendant standing in a parking lot known for drug activity, then reaching into the passenger side of a vehicle that subsequently drove away, was insufficient. In *Celestin v. State*, 255 Ga. App. 792, 795 (1) (567 SE2d 82) (2002), we held that a drug interdiction officer lacked reasonable, articulable suspicion to detain a bus passenger on the grounds that the passenger had disembarked after the officer boarded the bus, identified himself, and stated his intent to search for illegal narcotics, and the passenger later began to unpack his bag in front of the officer but then stopped and refused the officer's request for consent to further search the bag.

In *Holmes v. State*, 252 Ga. App. 286, 288-289 (556 SE2d 189) (2001), we found that an officer's observation of the defendant approaching the passenger side of a car in a "high crime area," then walking toward an apartment complex, and then walking back toward a car parked on the side of the road did not provide reasonable articulable suspicion. In *Peters v. State*, 242 Ga. App. 816, 816-817 (1) (531 SE2d 386) (2000), we held that officers' observation of the defendant hurrying out of an apartment complex breezeway that was known for heavy drug sales did not provide reasonable, articulable suspicion. And in *State v. King*, 227 Ga. App. 466, 468 (489 SE2d 361) (1997), we found no reasonable, articulable suspicion, where the officer observed the defendant and another person standing in front of an apartment complex in an area with high drug activity, in the middle of the night when the weather was below freezing, and where the defendant admitted that he did not live at that address and could not provide the officer with an explanation for his presence that satisfied the officer.

The officer in this case demanded that Hernandez-Espino give him the drugs because Hernandez-Espino walked out of an apartment building known for drug activity and could not name the person whom he had been visiting, and because the officer believed that he was lying. Nothing in the record suggests that the officer saw

11

Hernandez-Espino do anything that appeared to be a criminal act. Compare *Thompson v. State*, 230 Ga. App. 131, 132 (495 SE2d 607) (1998) (finding reasonable, articulable suspicion for second-tier stop where officer saw defendant attempt to exchange something with another person in "what appeared to be a drug transaction" while standing in the middle of the street in a known drug area, and the defendant then told the officer he was on his way to his uncle's house but could not provide his uncle's name).

In this case, the facts testified to by the officer raised a subjective, unparticularized suspicion or hunch about Hernandez-Espino's reasons for being at the apartment complex, but they did not provide an "objective manifestation that [he] was, or was about to be, engaged in criminal activity." *Holmes*, 252 Ga. App. at 288. Consequently, the second-tier encounter was unlawful.

3. *The unlawful second-tier encounter tainted Hernandez-Espino's consent.*

There is no question that Hernandez-Espino consented to the search. The remaining question is whether his consent was tainted by the unlawful second tier encounter. We conclude that it was.

12

To justify the warrantless search on the ground of Hernandez-Espino's consent, notwithstanding the unlawful second-tier encounter, the state was obligated to establish both that his consent

> was voluntary and also that his consent was not the product of the illegal seizure, but rather was sufficiently an act of free will to purge the primary taint. . . . Proof of a voluntary consent alone is not sufficient. The relevant factors include the temporal proximity of an illegal seizure and consent, intervening circumstances, and the purpose and flagrancy of the official misconduct.

*State v. Poppell*, 277 Ga. 595, 597 (3) (592 SE2d 838) (2004) (citations and punctuation omitted). Accord *Black v. State*, 281 Ga. App. 40, 47 (635 SE2d 568) (2006); *Pledger v. State*, 257 Ga. App. 794, 800 (572 SE2d 348) (2002).

Here, the officer obtained the consent to search immediately after he unlawfully escalated the encounter to the second tier, and the record reveals no intervening circumstances that would attenuate the causal chain. See *State v. Lanes*, 287 Ga. App. 311, 313 (651 SE2d 456) (2007); *Black*, 281 Ga. App. at 48; *Pledger*, 257 Ga. App. at 800. "Consequently, [Hernandez-Espino's] consent was not purged of the taint of the preceding illegalit[y]." *Pledger*, 257 Ga. App. at 800. Our opinion in *Johnson v. State*, 313 Ga. App. 137 (720 SE2d 654) (2011) (physical precedent), cited by the

13

trial court, does not require a different conclusion. We found in that case that the second-tier detention of the defendant was lawful. See id. at 139-140 (1). Moreover, because less than a majority of the voting judges concurred in the opinion in *Johnson*, that opinion is not binding precedent. See Ct. App. R. 33 (a).

Because Hernandez-Espino's consent to search was not purged of the taint of the unlawful second-tier encounter, the trial court erred in denying his motion to suppress the evidence found during that search. See *Pledger*, 257 Ga. App. at 800.

*Judgment reversed. Phipps, C. J., concurs. Barnes, P. J., and Ellington, P. J., concur. Doyle, P. J., Boggs and Branch, JJ., dissent.*

A13A1434. HERNANDEZ-ESPINO v. THE STATE.

DOYLE, Presiding Judge.

Because the officer's interaction with Hernandez-Espino did not rise to the level of a second-tier encounter and Hernandez-Espino voluntarily consented to the search of his person, I would affirm the trial court's denial of the motion to suppress.

"In a first-tier encounter, police may approach citizens, ask for identification, ask for consent to search, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave."[1] "A citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter."[2] A seizure or second-tier encounter "only occurs when, in view of all the circumstances

---

[1] (Punctuation omitted.) *Carter v. State*, 319 Ga. App. 624, 625-626 (737 SE2d 724) (2013).

[2] (Punctuation omitted.) *Thomas v. State*, ___ Ga. App. ___, ___ (2) (b) (Case No. A13A0308, decided July 9, 2013).

surrounding the incident, a reasonable person believes that he is not free to leave."[3] "To initiate [a] second-tier encounter[, an] officer must make [him]self clear, as by giving an order or command."[4] Factors to consider when determining if words or conduct are considered a command include whether (1) the presence of several officers was threatening; (2) any weapon was displayed; (3) any physical touching occurred; or (4) any language or tone of voice indicated that the defendant was compelled to comply with the police requests.[5] "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person."[6]

In *State v. Dukes*,[7] involving a charge of obstruction, we affirmed the grant of a motion to suppress because the police encounter with Dukes was a first-tier encounter, not a second-tier encounter as argued by the State. The facts set forth in that opinion show that after receiving a report of drug dealing, officers approached

---

[3] (Punctuation omitted.) *Carter*, 319 Ga. App. at 625.

[4] *Thomas*, ___ Ga. App. at ___ (2) (b).

[5] See *State v. Dukes*, 279 Ga. App. 247, 249 (630 SE2d 847) (2006).

[6] Id.

[7] Id.

2

Dukes and others and asked Dukes what he was doing.[8] In response, Dukes said that he was "'just sitting around.'" The officer then asked Dukes if he had identification, and Dukes responded it was in his vehicle. The officer asked Dukes if he had any drugs on him and if he would mind emptying his pockets onto the picnic table. Dukes placed the items on the table and then ran from the officers.[9] We held that this interaction was a first-tier encounter because the officers did not seize Dukes, but instead, they simply approached and questioned him without effectuating a seizure.[10]

The officer here was not threatening nor did he use a show of force, touch Hernandez-Espino, or employ language or a tone of voice that would have made Hernandez-Espino believe he was compelled to comply with the officer's requests. The officer testified:

> I made contact with him. I asked him if he lived here. He stated that he didn't. I asked him what he was doing here. He said he was visiting a friend. I'm just, conversation, oh, yeah, really, who are you visiting. He pointed to the bottom apartment on the right, which I'm familiar with the residents of that building or residents of that apartment. And I just knew that he wasn't telling the truth, so I said, man, just give me the drugs you

---

[8] See id. at 247-248.

[9] See id. at 248.

[10] See id. at 249.

3

just bought. He was like, I don't have any drugs. And I said do you mind if I search you for guns or drugs.[11] And he said – he said yeah, go ahead, kind of like yeah, yes.

As described by the officer – and believed by the trial court – the officer was simply engaged in a conversation with Hernandez-Espino.

The majority focuses on the officer's later testimony that he "didn't ask him if he bought drugs. I told him to give me the drugs he just bought." This latter testimony occurred during questioning by the State in an effort to prove Hernandez-Espino understood English, not to establish whether the officer intended the statement as a command or request. As the officer previously testified, he was having a conversation with Hernandez-Espino and as part of that conversation, told Hernandez-Espino to give him the drugs. This is no different than the officer in *Dukes* asking Dukes to empty his pockets.

Moreover, an officer's use of the term "told" instead of "ask" during his or her in-court testimony should not be singularly determinative of whether an encounter is first or second-tier. This is overly technical and requires officers to carefully consider their choice of words in an encounter that might take mere seconds or minutes.

[11] A request to search made during the course of a first-tier encounter does not escalate the contact to a second-tier detention. See *Carter*, 319 Ga. App. at 626.

4

Instead, it is for the trial court to determine the credibility of the witnesses and evaluate whether the language used by an officer in conjunction with his presentation and tone of voice conveyed an intention to detain or merely converse with an individual.

The trial court heard the officer testify about the officer's initial contact with Hernandez-Espino and determined that the officer conducted a first-tier stop. We should not second-guess that determination.[12]

I am authorized to state that Judge Boggs and Judge Branch join in this dissent.

---

[12] "First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment." *Brown v. State*, ___ Ga. ___, ___ (3) (b) (2) (Case No. S12G1287, decided Oct. 21, 2013) (punctuation omitted).