**WHOLE COURT**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 27, 2014**

# In the Court of Appeals of Georgia

A13A2010. THE STATE v. RICHARDS.

RAY, Judge.

The State appeals from the trial court's grant of Paul Richards' motion to suppress the statements he made and the evidence found in his truck after an officer approached him while he was sitting in his vehicle at a gas station. The State contends that Richards voluntarily consented to the search of his truck and his person. For the reasons that follow, we reverse and remand with direction.

> In reviewing the grant or denial of a motion to suppress, we construe the evidence in a light most favorable to upholding the trial court's findings and judgment. When the trial court's findings are based on conflicting evidence, we will not disturb the lower court's ruling if there is any evidence to support its findings[.] . . . The trial court's application of law to undisputed facts, however, is subject to de novo review.

(Footnote omitted.) *McCormack v. State*, ___ Ga. App. ___ (1) (751 SE2d 904) (2013).

The undisputed evidence adduced at the motion to suppress hearing shows that, around noon on February 13, 2013, Atlanta Police Department Officer Whitfield observed a silver Nissan pickup truck parked at a gas pump at a station located on North Avenue in Fulton County. The location, which is near the Georgia Tech campus, is known for high drug traffic, particularly heroin.

Richards and another man were just sitting in the truck, so Officer Whitfield pulled up beside the driver's side and began a conversation with them. Both Richards, who was sitting in the driver's seat, and the passenger stated that they were visiting a friend at Georgia Tech and were on their way home to Dalton.

During the conversation, Officer Whitfield asked Richards and the passenger if either of them used any illegal drugs, and Richards responded that he had used oxycodone in the past and was on probation for drug charges. Officer Whitfield then asked the men if they would mind showing him their arms. When Richards pulled up his sleeves, the officer saw track marks on his arms that did not appear to be fresh.

Meanwhile, two backup officers arrived in a patrol car and a second unmarked vehicle. One officer was in uniform and the other backup officer wore plain clothing,

2

except for an Atlanta Police vest. After the backup officers arrived, Officer Whitfield asked Richards if he had any drugs on his person or in the truck. Richards responded that there was a package of syringes in the truck for the passenger's diabetic grandmother. The passenger removed the syringes and gave them to Officer Whitfield.

Officer Whitfield then searched Richards's person, with his consent, and found $250 in Richards' shirt pocket. When Officer Whitfield asked Richards why he had the money, Richards responded that he was waiting to meet a drug dealer to buy a gram of heroin. Shortly thereafter, one of the backup officers performed a consent search of Richards' truck and found a small black overnight bag in the rear seat of the truck on the driver's side. The bag contained a five milliliter bottle of ketamine — a schedule 3 substance used as a horse tranquilizer. Richards initially stated that the black bag belonged to him, but retracted his statement after the ketamine was discovered inside the bag. Richards and the passenger were then placed under arrest, received their *Miranda* rights and waived them.

Richards subsequently moved to suppress his statements and the evidence found in his truck. Following a hearing, the trial court granted the motion, finding that Richards was subjected to a seizure at the moment Officer Whitfield asked him to roll

3

up his sleeves to check his arms for needle track-marks. The trial court further found that the mere fact that Richards was stopped at a gas pump at noon in a high drug area and was on probation for drugs did not create the reasonable articulable suspicion necessary to justify the seizure, and that this unlawful seizure tainted Richards' subsequent consent to the search of his person and vehicle.

1. The State contends that the trial court erred in granting Richards' motion to suppress by failing to apply the law to the facts of the case. Specifically, the State argues that the trial court erred in finding that Officer Whitfield's request to see Richards' arms was a "seizure" which required articulable suspicion that Richards was engaged in criminal activity. We agree.

> Our analysis necessarily begins with the Fourth Amendment to the United States Constitution, which provides, inter alia, that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. In construing this amendment, the Supreme Court of the United States has set forth . . . three tiers of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment, (2) brief seizures that must be supported by reasonable suspicion, and (3) full-scale arrests that must be supported by probable cause.

4

(Punctuation and footnotes omitted.) *In the Interest of J. B.*, 314 Ga. App. 678, 680 (1) (725 SE2d 810) (2012).

"In a first-tier encounter, police may approach citizens, ask for identification, *ask for consent to search*, and otherwise freely question the citizen without any basis or belief of criminal activity so long as the police do not detain the citizen or convey the message that the citizen may not leave." (Punctuation and footnote omitted; emphasis in original.) *Carter v. State*, 319 Ga. App. 624, 625-626 (737 SE2d 724) (2013). "A citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter." (Citation omitted.) *Thomas v. State*, 322 Ga. App. 734, 737 (2) (b) (746 SE2d 216) (2013).

A seizure or second-tier encounter "only occurs when, in view of all the circumstances surrounding the incident, a reasonable person believes that he is not free to leave." (Footnote omitted.) *Carter*, supra at 625. Here, in order for Officer Whitfield's request to see Richards's arms to be considered a seizure or second-tier encounter, the officer must have appeared to be asserting some authority, such as giving an order or a command. *Thomas*, supra. Factors to consider when determining if an officer's words or conduct are considered a seizure include: (1) whether there were several officers present, creating a threatening atmosphere; (2) whether any

5

weapon was displayed; (3) whether any physical touching occurred; or (4) whether any language or tone of voice indicated that the defendant was compelled to comply with the officer's request. See *State v. Dukes*, 279 Ga. App. 247, 249 (630 SE2d 847) (2006). "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." (Footnote omitted.) Id.

In *Dukes*, a case involving a charge of obstruction, officers approached Dukes and others outside a convenience store, and one of the officers asked Dukes what he was doing. In response, Dukes said that he was "just sitting around." The officer asked Dukes if he had identification, and he responded that it was in his vehicle. The officer then asked Dukes if he had any drugs on him and if he would mind emptying his pockets onto the picnic table. Dukes placed the items from his pockets onto the table and then ran from the officers. Id. at 247-248. We held that this interaction was a first-tier encounter because the officer did not seize Dukes, but instead, the officer simply approached and questioned him without effectuating a seizure. Id. at 249.

A similar factual scenario is presented in this case. Here, Officer Whitfield was not threatening nor did he use a show of force, and he did not touch Richards or employ language that would have made Richards believe he was compelled to comply

6

with the request to roll up his sleeves. Specifically, Officer Whitfield testified to the following facts:

> I observed a silver Nissan Frontier pickup parked at the gas pump at the [convenience store]. . . . I observed that [the men] were just sitting in the car not getting gas, not going in the store. So I . . . pulled up beside the driver['s] side of the vehicle and began [a] conversation with the occupants. . . . I explained to the occupants that the area was known for high drug traffic and asked if either of them used any illegal drugs. . . . Richards stated that he used oxycodone in the past and [that] he was on probation for drug charges. At that point, I asked both occupants if they would mind showing me their arms. At that point, both occupants did so.

The above testimony clearly indicates that Officer Whitfield was simply engaged in a conversation with Richards and the other occupant at the time he asked the men to roll up their sleeves. There was no evidence that the men had been detained at this point. In fact, the record shows that the men were still in their vehicle during this time. A request to search made during the course of a first-tier encounter does not escalate the contact to a second-tier detention. See *Carter*, supra at 626.

In *Brown v. State*, 301 Ga. App. 82 (686 SE2d 793) (2009), we held that a first-tier encounter escalated to a second-tier encounter when the officer *directed* the defendant to remove his hands from his pockets. Id. at 84. Here, however, Officer

Whitfield made no such demand. He merely asked the men if they would mind showing him their arms. This request does not constitute a second-tier encounter. See *Carter*, supra at 624-626 (first-tier encounter where officer asked defendant if he could retrieve a tool containing knives from the defendant's pocket and defendant consented); *Dukes*, supra at 248-249 (first-tier encounter where officer asked defendant if he would mind emptying his pockets and defendant consented).

Blocking a defendant's path or exit can also escalate a first-tier encounter into a second-tier detention. See *In the Interest of J. B.*, supra at 681 (1). Here, however, the evidence is undisputed that Officer Whitfield pulled alongside Richards's vehicle and was not blocking his exit. Furthermore, there was no evidence as to when the backup officers arrived or where they parked, and the trial court made no such finding. Rather, the trial court clearly bases its ruling on the erroneous belief that Officer Whitfield's mere request to see Richards's arms constituted a seizure. This is not the law.

As the officer's interaction with Richards at the time of the request did not constitute a second-tier detention, the trial court erred in granting the motion to suppress on this basis.

2. The question of whether the arrival of the backup officers had any effect on Richards' *subsequent* consent to the search of his person and vehicle was not addressed by the trial court.

> In a consent search, the burden is on the State to demonstrate that the consent was voluntarily given, and not the result of duress or coercion, express or implied. Whether an individual's consent is, in fact, voluntary, is to be determined from the totality of all the circumstances under which consent was given.

(Punctuation and footnotes omitted.) *State v. Baker*, 261 Ga. App. 258, 260 (582 SE2d 133) (2003). "As this [C]ourt is limited to resolving questions of law rather than fact," the issue of Richards' subsequent consent to the search of his person and vehicle must be remanded to the trial court for further consideration. (Punctuation and footnote omitted.) Id.

Accordingly, the trial court's ruling on the motion to suppress is reversed, and the case is remanded to the trial court to address the issue of whether the presence of the additional officers had any effect on Richard's subsequent consent to the search of his person and vehicle.

*Judgment reversed and case remanded with direction. Andrews, P. J., Doyle, P. J., Dillard and McMillian, JJ., concur. Barnes, P. J. and Miller, J., dissent.*

9

A13A2010. THE STATE v. RICHARDS.                                    MI-074C

MILLER, Judge, dissenting.

I respectfully dissent to the majority's opinion because this encounter between Richards and Officer Whitfield quickly escalated to an unlawful second-tier seizure. When the armed backup officers arrived with weapons in full view, Officer Whitfield lacked a reasonable articulable suspicion which is required for a second-tier detention. Moreover, contrary to the majority's opinion, it is not necessary for this Court to remand this case to the trial court to consider whether Richards's voluntarily consented because the trial court has already found that any consent given was in fact tainted by the unlawful seizure. The trial judge's decision on the motion to suppress in this case must be affirmed if any evidence supports it, and this is not a case in which this Court has authority to review the facts de novo. To decide this case otherwise is very troublesome because the circumstances in this case would have placed *any reasonable person* in fear of imminent harm and certain detention.

> [W]hen a motion to suppress is heard by the trial judge, that judge sits
> as the trier of facts. The trial judge hears the evidence, and his findings
> based upon conflicting evidence are analogous to the verdict of a jury
> and should not be disturbed by a reviewing court if there is any evidence
> to support it. Second, the trial court's decision with regard to questions

of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. On numerous occasions the appellate courts of this state have invoked these three principles to affirm trial court rulings that upheld the validity of seizures. These same principles of law apply equally to trial court rulings that are in favor of the defendant [.]

(Citation and footnote omitted.) *Miller v. State*, 288 Ga. 286, 286 (1) (702SE2d 888) (2010); see also *Brown v. State*, 293 Ga. 787, 803 (3) (b) (2) (720 SE2d 148) (2013). Even when, as here, only one witness testifies at the suppression hearing, we *never second-guess* the trial court's factual findings where they are based on testimonial evidence. See *Rogue v. State*, 311 Ga. App. 421, 422 (715 SE2d 814) (2011).

1. While the initial contact between Officer Whitfield and Richards was a first-tier encounter, the encounter quickly escalated to a second-tier seizure, which would have required reasonable articulable suspicion, when the backup officers arrived. The evidence shows that the armed backup officers arrived before Officer Whitfield asked Richards if he had any drugs on his person or in his truck.[1]

---

[1] The evidence shows that all three officers, including Officer Whitfield, had their guns on their belts.

In determining whether a police-citizen encounter constituted a [second-tier] seizure, a court must answer whether, considering all the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that the person *was not free to decline the officers' requests* or otherwise terminate the encounter. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating compliance with the officer's request might be compelled.

(Footnotes omitted; emphasis supplied.) *Cutter v. State*, 274 Ga. App. 589, 592 (1) (617 SE2d 588) (2005). "It is well settled that a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter." (Punctuation and footnote omitted.) *In the Interest of J. B.*, supra, 314 Ga. App. at 681 (1); see also *Thomas v. State*, 301 Ga. App. 198, 200-201 (1) (687 SE2d 203) (2009) (encounter is deemed to be first tier if reasonable person in citizen's position would feel free to decline officer's request to speak with him). Moreover, this Court has held that an encounter escalates from first tier to second tier when an officer directs a defendant to take certain action. See *Brown v. State*, 301 Ga. App. 82, 84-85 (686 SE2d 793) (2009) (officer directed defendant to remove his hands from his pockets,

thereby escalating encounter from first tier to second tier). Blocking a defendant's path or exit can also escalate a first-tier encounter into a second-tier detention. See *In the Interest of J. B.*, supra, 314 Ga. App. at 681 (1).

Our review of the record, shows that Officer Whitfield's testimony regarding the encounter was contradictory and inconsistent. Notably, Officer Whitfield testified that he could not remember whether the backup officers blocked Richards's exit with their patrol cars. Notwithstanding this testimony, however, Officer Whitfield clearly remembered certain details, including Richards's explanation regarding why he was parked at the gas station; the fact that he never touched Richards's arms when Richards show him the track-marks; the fact that the track-marks did not appear to be fresh; and details regarding the backup officers's uniforms and vehicles and the fact that they all had guns on their belts. Moreover, Officer Whitfield admitted that the backup officers were present when he asked Richards whether he had drugs in his truck or on his person, and the evidence shows that Officer Whitfield asked this question immediately after Richards showed the officer his arms.

The trial court had an opportunity to observe Officer Whitfield's testimony regarding the encounter first hand and was entitled to disbelieve his testimony that he could not remember whether the backup officers blocked Richards's exit. See

*Brown*, supra, 293 Ga. at 804 (3) (b) (2). Under the totality of the circumstances and when construed most favorably to uphold the trial court's judgment as this Court is required to do, the trial court was authorized to find that the backup officers were present and were blocking Richards's exit when Officer Whitfield asked Richards whether he had drugs in his truck or on his person. Moreover, the evidence shows that Officer Whitfield asked this question immediately after Richards showed the officer his arms. Accordingly, the trial court was further authorized to find that the encounter rose to the level of a second-tier seizure at that time.

2. Officer Whitfield lacked reasonable suspicion for a second-tier detention.

[A] second-tier, investigative detention . . . require[s] the officer to have a particularized and objective basis for suspecting that [the citizen] was or was about to be involved in criminal activity. To stop a citizen, the officer must possess more than a subjective, unparticularized suspicion or hunch. The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing. This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence.

(Citations and punctuation omitted.) *Thomas*, supra, 301 Ga. App. at 201 (1). Moreover, mere presence in an area known for drug activity is insufficient to support a reasonable suspicion that a citizen is engaged in or about to engage in criminal activity. See id. at 202 (1).

Here, the evidence supports the trial court's finding that Officer Whitfield lacked reasonable suspicion to justify the second-tier seizure. Notably, the evidence showed that Officer Whitfield approached Richards merely because he was stopped at a gas station known for high drug traffic. Moreover, Officer Whitfield had not received any complaints about criminal activity at the gas station, did not smell any drugs and did not witness any drug transactions or criminal activity.

3. The unlawful second-tier detention tainted Richards's consent.

Although the second-tier seizure in this case was unlawful, the State contends and Officer Whitfield testified that Richards consented to the search of his person and his truck.

> In a consent search, the burden is on the State to demonstrate that the consent was voluntarily given, and not the result of duress or coercion, express or implied. Whether an individual's consent is, in fact, voluntary, is to be determined from the totality of all the circumstances under which consent was given. As a general rule, voluntariness is an issue of fact for the trial court.

6

(Punctuation and footnotes omitted.) *State v. Baker*, 261 Ga. App. 258, 260 (582

SE2d 133) (2003). Moreover, the State was obligated to establish that Richard's

consent to search

> was not the product of the illegal seizure, but rather was sufficiently an
> act of free will to purge the primary taint. In order to eliminate any taint
> from an involuntary seizure or arrest, there must be proof both that the
> consent was voluntary and that it was not the product of the illegal
> detention. Proof of a voluntary consent alone is not sufficient. The
> relevant factors include the temporal proximity of an illegal seizure and
> consent, intervening circumstances, and the purpose and flagrancy of the
> official misconduct.

(Citations and punctuation omitted.) *State v. Poppell*, 277 Ga. 595, 597 (3) (592 SE2d

838) (2004).

In granting Richards's motion to suppress, the trial court specifically found that

his consent to search after the illegal seizure was tainted and, therefore, inadmissible.

The evidence supports this finding. Notably, Officer Whitfield obtained Richard's

consent to search his person and his truck shortly after he unlawfully escalated the

encounter to a second-tier seizure and the evidence reveals no intervening

circumstances.

7

Construing the evidence to uphold the trial court's findings and judgment, I conclude that the trial court's finding that Richards did not voluntarily consent to the search was not clearly erroneous. See *Poppell*, supra, 277 Ga. at 598 (3). Moreover, Richards's statements to Officer Whitfield, which Richards made before the ketamine was found and before he was arrested, were not sufficiently attenuated from the illegal search to be purged from the taint and thus resulted from a violation of Richards's Fourth Amendment rights. See *Corey v. State*, 320 Ga. App. 350, 357 (1). (739 SE2d 790) (2013). Accordingly, I would affirm the grant of Richards's motion to suppress.

I am authorized to state that Presiding Judge Barnes joins in this dissent.